W. O. MULLER & CO. v. COMMISSIONERS OF BUNCOMBE COUNTY.

*License to Retail Liquor—Discretion of Commissioners in Granting.*

1. The commissioners of a county do not possess the arbitrary power of suppressing all places for retailing spirituous liquors; nor are they bound to license an applicant though he be qualified by proof of good moral character.

2. They have a limited legal discretion; and in passing upon an application for license, they have a right to take into consideration the questions, whether the demands of the public require an increase of such accommodations, and whether the place it is proposed to establish a bar-room' is a suitable one. THE CODE, §3701, construed by ASHE, J.

(*State* v. *Melton*, Busb., 49; *State* v. *Woodside*, 9 Ired., 496; *Attorney-General* v. *Justices*, 5 Ired., 315, cited and approved).

APPLICATION FOR MANDAMUS heard at Chambers in Asheville on the 27th of November, 1883, before *Gudger, J.*

The application was made by the plaintiffs against the defendant board of commissioners of Buncombe county.

When the cause came on to be heard, both parties being represented by counsel, it was agreed that irregularities and informalities on both sides should be waived, and the matters in controversy should be determined upon the facts and law raised in the pleadings, and after the matters were so heard and debated by counsel the court found the following facts:

1. The defendants are commissioners of the county of Buncombe.

2. The plaintiffs are citizens and residents of the town of Asheville, in said county.

3. That the plaintiffs, at the regular meeting of the defendants, on the 6th day of November, 1883, applied to them for license to retail spirituous and malt liquors by measure less than a quart in said town; that the plaintiffs tendered proof of their good moral character, which was admitted, and showed the place where they proposed to carry on their business (the house then occupied by W. O. Muller & Co., situate on Patton avenue, in the town of Asheville), which was not within any territory where the sale of liquor was forbidden by law.

4. The defendants refused to grant the license, believing they had a reasonable discretion in the granting or refusing the same.

5. That the facts set forth in the fourth paragraph of the answer, upon which the defendants found their action, are true, the plaintiffs admitting them substantially to be true as therein stated, which facts are as follows, to-wit:

That they, as the board of commissioners, were clothed by law with a reasonable and sound discretion in the matter of granting license to retail spirituous liquors within the county of Buncombe; that honestly, and as they believed for the best interest of the community of Asheville, as well as for that of the dealers in liquors to whom they had before then granted license (they had granted license to five persons or firms in said town, the plaintiff Muller being one of them) to retail such liquors in said town; and at the time of said application, as well as since and for a long time theretofore, there were issued licenses to five of such establishments, which are now in business, and sufficient in capacity and accommodations to supply the wants and necessities of the inhabitants and visitors of said town; that the said town contains from three to four thousand inhabitants and is rapidly increasing in population. It already has seven or eight churches, two academies for the instruction of boys, one college for the education of girls, besides many other private schools. It is a popular summer resort, much frequented at all seasons by persons from a distance seeking recreation; that owing to the peculiar character of the territory inclosed within its boundaries, it is difficult to police the residences of its citizens, in many instances widely separated from the dense and populated business portion thereof; that keeping in view these circumstances, as well as the requirements of the people generally for refreshments, the defendants, in granting license several years since, caused it to be publicly announced that they would not license any establishment of this character save on Main street, and near the centre of the town, where it was possible to keep the results likely to flow from such traffic under the constant supervision of the corporate authorities and officers; that the plaintiff Muller had full notice of this requirement and had availed himself of it; that the place where the plaintiffs propose to open another establishment is in every way unfit for the traffic. It is on one of the streets leading from the public square to that portion of the town most densely occupied by the inhabitants thereof for pri-

vate residences. It is a building in sight of the Methodist, Presbyterian and Episcopal churches, not more than one hundred yards from the nearest, and not exceeding two hundred yards from the farthest of them; that it is one of the streets through which a large portion of the citizens must pass on their way to the churches aforesaid, and other places of worship, on Sundays and other days, and one of the principal streets used by the children of both sexes in going to and returning from school, and it is the most popular and frequented street in town for persons who walk; that they honestly believe that the opening of a barroom on such a street, with its inevitable attendant evils, could not but be most distasteful to all the inhabitants of said town, and injurious to the peace, good order and morals of the community.

Some of the churches above referred to are as near some of the licensed bar-rooms as to the house in which the plaintiff proposes to retail, but they are on opposite sides of the public square, with intervening structures, trees, fences, walls, &c., so that the sights and sounds of an unpleasant character which usually are seen and heard about bar-rooms, are concealed and prevented from offending citizens while attending divine worship.

It was under these circumstances and for these reasons that they have time and again refused to grant license to the plaintiffs.

*Messrs. W. H. Malone* and *Hinsdale & Devereux,* for plaintiffs.
*Messrs. Battle & Mordecai,* for defendants.

ASHE, J., after stating the facts. The only question presented by the appeal in this case for our determination is, whether the board of commissioners of a county, under THE CODE, §3701, have any discretion in the granting license to retail spirituous liquors by a quantity less than ⸱ ⸱ ⸱ rt, when the applicant has complied with the requirements of the act by proving a good moral character.

In the investigation of the question it is necessary to review the history of the legislation on the subject to come to a just and satisfactory conclusion.

The first act on this subject was the act of 1825, ch. 1272, §§2 and 3, amended by the act of 1828, ch. 10, combined in the Revised Statutes, ch. 82, §7, which enacts that every person wishing to retail spirituous liquors by a measure less than a quart shall apply to the court of pleas and quarter sessions of the county in which he resides, to obtain an order therefor, which order *shall be granted by the said court*, seven justices being on the bench, only to such free white persons as shall satisfactorily show to the court their good moral character by at least two witnesses of known responsibility, to whom the character of the applicant has been known for at least one year.

This act was followed by the provision in the Revised Code, ch. 79, §6, which amended the Revised Statutes, ch. 82, §7, by requiring that the place should be designated in the application for license and omitting the residence of the applicant.

Then came the act of 1872–'73, ch. 144, schedule B, §11, which omitted the designation of the place and the proof of good moral character, and provided that the commissioners *may grant license at their option*, and by section 8, schedule C, repealed all former laws on the subject. And this act was amended by the act of 1881, ch. 116, §26, only in the particular of substituting the word "gallon" in place of "quart," and this act, as amended, was again amended by the act of 1883, ch. 10, which struck out the word "gallon" and restored "quart."

Then, upon the ratification of THE CODE, the act of 1872–'73, as amended by the acts of 1881 and 1883, was impliedly repealed by section 3701 of THE CODE, which declares that "every person desiring to sell spirituous or malt liquors, wines, cordials or bitters in quantities less than a quart, shall, before engaging in the said sale, file his petition stating the place and house in which he proposes to retail, and obtain an order from the board of com-

missioners of the county to grant him a license to retail at that place, which order *they shall grant* to all properly qualified applicants.

From this brief history of the legislation on the subject of traffic in liquors, it will be seen that the law has been changed, from time to time, in accordance with the fluctuations of popular sentiment. But the last expression of the legislative intention, as declared in THE CODE, §3701, restored the law as provided in the Revised Code, ch. 79, §6.

THE CODE, §3701, is so variant from and inconsistent in its provisions with those of the act of 1872–'73, and the several statutes amendatory thereof, that they are necessarily repealed by implication; and the effect of that repeal is to revive section 6 of chapter 79 of the Revised Code, so far as the provisions of that section are not repugnant to those of the former.

Upon comparing these sections, so far from there being any repugnancy, they are substantially the same in their provisions. In each section it is provided that the applicant shall obtain an *order;* in one case, from the county court, seven justices being present; and in the other, from the board of commissioners, designating the *place* where it is proposed to retail, and upon showing they are properly qualified (that is, by proving a good moral character), a license *shall* be granted, omitting in the last act the words "free white persons." The two sections then, being *in pari materia,* are to be construed together. *State* v. *Melton,* Busb., 49; *State* v. *Woodside,* 9 Ired., 496.

It will however be noticed that the section of the Revised Code here referred to is the same as section 7, chapter 82 of the Revised Statutes, with a slight modification. It is in fact a re-enactment of that section *in totidem verbis,* except that the former act dispenses with a residence of the applicant in the county, and required that the place where it was proposed to retail should be designated. The change was immaterial so far as it affected the substance of the section in the Revised Statutes.

This then brings us to the main point in the case. What is the proper construction of THE CODE, §3701, in reference to the question presented by the appeal?

The section being substantially the same as that contained in Revised Statutes, chapter 82, §7, whatever construction was given to that section must be given to this, and a construction was given to it by Chief-Justice RUFFIN in an able and elaborate opinion in the case of *Attorney-General* v. *The Justices of Guilford county*, 5 Ired., 315. And SIR EDWARD COKE has said: " Great regard ought, in construing a statute, to be paid to the construction which the sages of the law, who lived about the time or soon after it was made, put upon it, because they were best able to judge of the intention of the makers at the time when the law was made." In that case the applicant claimed that when he complied with the requirements of the act by proving a good moral character, the justices were bound to grant him license, and they, on the other hand, contended that they had, by a proper construction of the act, an unrestricted discretion to grant or refuse a license. The chief-justice was of the opinion that neither construction was correct, that "the legislature meant neither extreme, but the mean between them." He said:

" It is clear, as it seems to us, that the justices have not, by the just construction of the law, the arbitrary power of suppressing all places for the retailing of spirituous liquors. On the other hand, we hold they are not entirely without discretion as to be bound to license any applicant, though he be qualified. It is true there is no express grant of discretion *eo nomine* in the 7th section of the Revised Statutes, nor is it to be found in the acts of 1825 or 1828 which are combined in that section. But the very requiring a license, and the presence of so many magistrates at the granting of it, imports a duty of *judging* whether the supply of retailers is adequate to the accommodation of the public. Not indeed upon the arbitrary principle that the people ought not to be allowed any, but upon the principle of the legislative policy that they shall have those accommodations accord-

ing to the demand the justices really believe will be made by those of the people who repair to such places 'for their relief,' as the statute of Edward expresses it. So too, there are situations in which it would be so unseemly that a tippling-house should be set up, that all men would be shocked at one's being licensed there; as literally, at a church door or school-house, or even so near a court-house as to incommode the court in the dispatch of business."

So we here have what may be considered a contemporaneous construction of the section in question; and it is to the effect that the commissioners have a limited discretion; and in judging whether a license should be granted in any case, that they may take into consideration the questions whether the demands of the public require an increase of such accommodations, and whether the place where it is proposed to establish a retail shop is a suitable one. This is all the board of commissioners have done in this case. They had already granted license to some five persons or firms in the town of Asheville, which in their judgment was amply sufficient to afford accommodations to all such as might be disposed to seek "relief" at such places, and they believed that the place designated in the petition was an unfit location for such an establishment, being situate on a street principally occupied by the inhabitants of the town for private residences, in sight of three churches, not more than one hundred yards from the nearest and not exceeding two hundred from the farthest: a street through which a large portion of the citizens passed in going to and from the churches on Sundays and on other days when divine worship is had in them; and the principal street in the town through which the children of both sexes passed in going to and from school.

Besides these, which we think were sufficient reasons for the exercise of their discretion by the commissioners, they offered other cogent reasons why they felt warranted in refusing the license to the plaintiffs. And being of opinion that the board of commissioners exercised a sound legal discretion in refusing to

grant a license to the plaintiffs to retail spirituous liquors at the place designated in their petition for a *mandamus,* we hold there was no error committed by the court below, and therefore affirm the judgment.

No error.                                    Affirmed.