BARNES v. COMMISSIONERS.

(Filed April 12, 1904).

1. INTOXICATING LIQUORS — *County Commissioners — Licenses—*
   *Mandamus—Acts 1903, ch. 233—Acts 1893, ch. 294, sec. 33—Acts*
   *1897, ch. 168, sec. 34—Acts 1903, ch. 247, sec. 66—The Code,*
   *sec. 623.*

   Under Acts 1903, ch. 233, a *mandamus* will not lie to control the
   discretion of the county commissioners in the matter of grant-
   ing liquor licenses.

2. MANDAMUS—*Demurrer Ore Tenus—Pleadings.*

   The motion of the plaintiff in *mandamus* proceedings, on the plead-
   ings and admissions of defendant, for a *mandamus,* is in the
   nature of a demurrer *ore tenus* to the answer, involving the
   admission of the facts set out therein.

   DOUGLAS, J., dissenting.

ACTION by L. A. Barnes against the Commissioners of
Wilson County, heard by *Judge Frederick Moore,* at Cham-
bers, in Wilson, N. C.

This is an action brought by the plaintiff in which he
seeks to have issued a writ of *mandamus* directed to the
commissioners of the county of Wilson requiring them to
issue to him a license to retail liquors. As the case was
heard on complaint and answer, it will be necessary to set
out the substance of the pleadings. The plaintiff alleges
that he is a *bona fide* resident and citizen of the said county
and a legal voter therein. That the town of Black Creek
is and has been an incorporated town in said county for
many years, and that on October 19, 1903, in accordance
with the provisions of chapter 233 of the Public Laws of
1903 (Watts Law), an election was duly held in said town
to determine whether or not liquor should be sold, a major-
ity of the votes having been cast in favor of the sale of liquor.

That in the following January the plaintiff applied to the Board of Commissioners of the town of Black Creek for a license to sell liquors for six months from the first Monday of January, 1904, which license was granted. Afterwards an application was made by him to the defendants for an order to be issued to the Sheriff of said county directing him to issue license to the plaintiff to retail liquors in Black Creek, the plaintiff, at the time of his application to the defendants, having exhibited to them his license issued by the commissioners of Black Creek. Plaintiff then alleges that, in making his said application to the defendants, he accompanied it with the necessary affidavits of six freeholders, who were tax payers and residents of Black Creek, as to his being a suitable person and as to the suitableness of the place at which he proposed to conduct his business, and that he presented sufficient proof of all the other facts required to be shown in order to entitle him to a license, and further that, in all other respects, he complied with the law and was ready and willing to pay to the Sheriff the fees and tax required by law to be paid in such cases. The plaintiff's application was refused by a vote of three against and two in favor of issuing license. Plaintiff further alleges that no evidence was introduced before the board to show that plaintiff was not a proper person to sell liquors, nor that the place where he proposed to sell was not a suitable one, and that the majority of the board who voted against granting him license did not exercise their discretion, if, under the law, they have the right to do so, but on the contrary arbitrarily refused to grant license to all parties who applied for license to sell liquors in the other incorporated towns of said county. Plaintiff prayed for a *mandamus* to compel the defendants to order the Sheriff to issue to them a license to sell liquors at the place designated in their application.

The defendants answered and admitted the allegations of

the complaint, except the allegation that the majority of the board did not exercise their discretion, but arbitrarily refused to grant a license, and that this was denied. The defendants further averred: "That, on the first Monday in January, 1904, at the regular meeting of the Board of County Commissioners of Wilson County, the plaintiff filed with said board an application in the manner and form required by law, asking for an order from said board to the Sheriff of Wilson County, directing and commanding said Sheriff to issue to the plaintiff a license to sell spirituous, vinous and malt liquors in the town of Black Creek in the county of Wilson. That at said meeting a number of other applications were also filed with said board for a like order. That in order to expedite the investigation and consideration of said applications, the defendant board set the hour of 2 P. M. on said day as the time at which the investigation and consideration of said applications should be taken up. That at said hour the said board entered into investigation and consideration of said applications, and the balance of the day was taken up in such investigation and consideration. That said board then adjourned to meet at 11 o'clock A. M. of the next day to continue such investigation and consideration, and that said board met at said hour on the following day and continued such investigation and consideration. That after an extended investigation and consideration, the application of this plaintiff and the application of each of the other parties applying for license as aforesaid, were separately balloted upon by the members of said board. That when the ballot on the plaintiff's application was counted, it appeared that four of the members of the said board had voted against the granting of the order asked and that one of the members had voted in favor thereof; whereupon the chairman of the board announced that the plaintiff's application had been rejected." A copy of the minutes

of the said meeting and the adjourned meeting is attached and asked to be taken as a part of the answer.

"That the application of this plaintiff, and the application of each and every other person filed with said board for the purpose of obtaining a license to retail liquors as aforesaid, was separately considered and investigated by said board, and that the ballot taken thereon was in each case separate."

"That said defendant, Board of Commissioners of Wilson County, is advised, informed and believes, and upon such advice, information and belief avers that the law imposes upon said board the duty and responsibility of granting or refusing to grant all licenses to retail spirituous, vinous and malt liquors in the county of Wilson, and that the law further imposes upon said board the duty and responsibility of investigating and considering and passing upon the suitableness of each and every application and the fitness of the place at which said applicant proposes to carry on business, and the duty of investigating and considering all other matters and things pertaining to the issuing of said license and the proper regulation thereof, and that the law also vests in said board a legal discretion in passing upon such application. That the refusal of the defendant, the Board of Commissioners of Wilson County, to grant to the plaintiff a license to retail liquors as aforesaid was based upon the exercise of such legal discretion, and the defendant expressly alleges that it did exercise such discretion in refusing to grant the application of the plaintiff, and that such refusal was based upon and was for reasons which to said board seemed proper."

"That said Board of Commissioners expressly deny that the members thereof, either as a board or as individuals, or jointly, or severally, or by any agreement, express or implied, arbitrarily refused to grant to the plaintiff, or to any other

person applying therefor, a license to retail liquor, on the contrary the defendant alleges that each application was separately considered and voted upon, and that in each and every case where license was refused the said board, considering the responsibility and duty imposed upon it by law, carefully considered each application in all its phases, and that the refusal to grant the applicant a license as aforesaid was in the careful and diligent exercise of the legal discretion which said board is advised, informed and believes is vested in it by law, and was the result of a careful investigation and consideration of facts known to the members of said board."

The case came on to be heard, whereupon the following judgment was rendered: "This cause coming on to be heard and having been heard, now, upon motion of the plaintiff for judgment upon the pleadings in the cause and the admission of the defendants in open Court that the plaintiff L. A. Barnes is a proper person to sell spirituous, vinous and malt liquors:

"It is considered, ordered and adjudged that the defendant, the Board of Commissioners of Wilson County, forthwith assemble at the court-house in the town of Wilson, North Carolina, and, after due notice to the plaintiff, hear such testimony as may be offered at said meeting as to the question whether the building specified in the plaintiff's application is a suitable place for carrying on the business of selling spirituous, vinous and malt liquors, and after hearing such testimony find whether the said building is a proper place for carrying on said business or not, and record its finding upon said question upon the records of the said Board of Commissioners of Wilson County.

"It is further ordered and adjudged that if the said Board of Commissioners shall find that the building specified in plaintiff's application for license to sell spirituous, vinous

and malt liquors is a suitable place for carrying on said business, the said Board of Commissioners of Wilson County forthwith issue its order to the Sheriff of Wilson County to issue to the plaintiff license to sell spirituous, vinous and malt liquors, as prayed for in his application heretofore filed with said board, upon the payment by the said plaintiff of the taxes and fees required by law.

"It is further ordered and adjudged that if for any cause the said Board of Commissioners of Wilson County, after hearing testimony as to the suitability of the said building for the purpose aforesaid, shall fail or refuse to issue the said order to the Sheriff of Wilson County, the said Board of Commissioners shall, on Friday, February 19, 1904, show cause before the undersigned Judge of the Superior Court at Wilson, N. C., why a peremptory *mandamus* should not be issued against the said board commanding the said board to issue the said order to the Sheriff of Wilson County."

To the judgment the defendant duly excepted and appealed.

*Shepherd & Shepherd* and *F. A. & S. A. Woodard,* for the plaintiff.

*Connor & Connor, F. A. Daniels* and *W. A. Lucas,* for the defendants.

WALKER, J., after stating the case. The discussion of this case may be conveniently divided into three parts: (1) What was the law in regard to the nature of the discretion of the commissioners in granting licenses prior to the passage of the Act of 1903, chapter 233 (Watts Law)? (2) Has the law been changed by that act so as to limit their discretion and, if so, to what extent? (3) Was the particular judgment rendered by the Court erroneous in any view of the case?

It was provided by the Revised Statutes, chapter 83, section 7, that every person wishing to retail liquors by the small measure shall apply to the Court of Pleas and Quarter Sessions and obtain an order therefor, which order *shall* be granted by the said Court upon the applicant showing satisfactorily to the Court his good moral character by at least two witnesses of known respectability.

This statute was reviewed by this Court in *Attorney-General v. Justices,* 27 N. C., 315, and a substantial statement of what was therein decided will shed much light upon the question now in hand. The true meaning and signification of the language used in the Revised Statutes was elaborately considered by the Court, and the conclusion it reached, and the reasons for it, were stated with great learning and ability by *Chief Justice Ruffin.* We understand these to be the principles of law settled by that decision:

The justices of the County Court were not bound to grant a license to retail spirituous liquors to every one who proved himself of good moral character; nor had they, on the other hand, the arbitrary power to refuse, at their will, all applicants for license, who had the qualifications required by the statute.

They had the right to exercise only a sound, legal discretion, referring itself to the wants and convenience of the people, to the particular location in which the retailing was to be carried on, and to the number of retailers that were required for the public accommodation.

The justices having a discretion to a certain extent in granting licenses to retail, a *mandamus* will not lie to compel them to grant a license to any particular individual, though he may have been improperly refused a license.

But, if magistrates, fully informed that they have discretion to regulate a branch of the public police (as, in this case, in granting licenses to retailers), perversely abuse

their discretion by obstinately resolving not to exercise it at all, or by exercising it in a way purposely to defeat the legislative intention, or to oppress an individual, such an intentional and therefore corrupt violation of duty and law must be answered for on indictment.

In regard to the right of the Courts to review this discretion of the commissioners, in that case the justices, *Ruffin, C. J.,* says: "A *mandamus* lies only for one who has a specific legal right, and is without any other specific remedy. 1 Chitt. Gen. Pr., 790; *State v. Justices,* 24 N. C., 430. If, in this case, the Sheriff were to refuse to give a license after the Court had made an order for it, the redress would be by *mandamus,* as the specific remedy, as well as by action for the damages; for the party has a positive right to it from the Sheriff. But when we decide that the justices have a discretion, under circumstances, to refuse a license to the relator, although he be a fit person, we, in effect, decide that he cannot have *mandamus.* For it is the nature of a discretion in certain persons that they are to judge for themselves; and therefore no power can require them to decide in a particular way, or review their decision by way of appeal, or by any proceeding in the nature of an appeal, since the judgment of the justices would not then be their own, but that of the Court under whose mandate they gave it."

He cites several cases from the English Courts, showing that they had steadily refused to review or revise a decision based on the discretion or judgment of the justices either by an appeal or by *mandamus* or any other remedial process. Discussing the right of review by an appeal, he refers to *Lord Mansfield* as disclaiming any power to review the reasons of the justices or to overrule the discretion intrusted to them, and as holding that if they were partially, maliciously or corruptly influenced in the exercise of their discretion

and abused the trust reposed in them, they are liable to prosecution by indictment and, possibly, even to a civil action for damages. Again, says the *Chief Justice:* "The distinction between the different methods of proceeding is perfectly intelligible. The *mandamus* will not lie, because by law the justices, with local knowledge, are to judge for themselves, and the judges of a higher court are not to dictate to them. But the indictment will lie, because, although the law allows the justices to judge for themselves, it requires an *honest* judgment, *in subordination to the law,* and punishes a dishonest one, that is, one given in opposition to the known law."

It is settled therefore that the discretion confided to the commissioners is not merely a personal and arbitrary one, and that "they cannot convert the discretion to refuse a license to unfit persons, or, after enough have already been granted, to refuse further applications, into an arbitrary discretion and despotic resolution to grant a license to no person under any circumstances. "There is no arbitrary power that would be felt to be more unreasonably despotic and galling than that under which a small body of Inferior Court magistracy should undertake, upon their mere will, without any plain mandate from the law-making power, to set up their taste and habits as to meat, drink or apparel as the standard for regulating those of the people at large. For ages past sumptuary laws have been abandoned. The Legislature does not affect to assert that policy." 27 N. C., 326 and 321.

But while their discretion is not an arbitrary one, this is far from proving that the Courts can by the writ of *mandamus* coerce the commissioners into exercising that discretion in favor of any particular person or in any particular way. If the case of *Attorney-General v. Justices* decides anything, it certainly decides that a *mandamus* will not be

issued for the purpose of compelling the body invested with the discretion of granting or refusing a license to issue a license to a person whose application has been rejected by them. In that case the justices refused the application upon the single ground that their power to do so was absolute. No stronger case for a *mandamus,* if one can issue in any case, could have been presented, and yet the Court adjudged that, "Because this is not a case for a *mandamus,* the judgment of the Court must be reversed, and the motion for a peremptory *mandamus* is refused."

The case of *Attorney-General v. Justices* was reviewed at some length in *Muller v. Comrs.,* 89 N. C., 171, and was approved. It is true that *Ashe, J.,* who wrote the opinion of the Court, did not refer specifically to the question whether the decision of the commissioners was the subject of review, or whether their discretion could be controlled by *mandamus,* for it was not necessary to do so, as the Court held that the commissioners certainly had a discretion, which in that case was shown to have been properly and legally exercised by them.

In Tapping on Mandamus (Edition of 1853), at star pages 14 and 41, we find it stated generally that *mandamus* will not lie to command the exercise of a discretionary or voluntary act or right of what kind soever, so neither does it lie to influence nor control the exercise of such a discretionary act, power or right. It must, however, be clearly understood that although there may be a discretionary power, yet if it be exercised wrongfully or with manifest injustice the Court is not precluded from commanding its *due* exercise. So when one is to act according to his discretion, and he will not act, nor consider the matter, the Court will by *mandamus* command him to put himself in motion to do it, that is, to hear and determine or to inquire so that he may exercise a considerate discretion. "There is therefore no instance of a

*mandamus* to compel an 'approval,' but the Court will by its writ compel an inquiry, and in so doing it does not at all interfere with the exercise of such discretion." *Tapping,* star p. 15. "The writ does not lie to command the justices to license a victualler to sell ale, notwithstanding it was suggested that the refusal proceeded from a mistaken view of their jurisdiction, and also notwithstanding a very strong case of partiality was made out, for it is a matter entirely within their discretion. The proper course in such a case is to move for a criminal information, nor does it lie to rehear an application for license which they have refused because of a mistaken notion as to the law." Tapping, p. 41.

The rule is thus stated by another author: "We come next to consider of a fundamental rule underlying the entire jurisdiction by *mandamus* and especially applicable in determining the limits to the exercise of the jurisdiction over public officers. That rule is that in all matters requiring the exercise of official judgment, or resting in the sound discretion of the person to whom a duty is confided by law, *mandamus* will not lie either to control the exercise of that discretion or to determine upon the decision which shall be finally given. And whenever public officers are vested with power of a discretionary nature as to the performance of any official duty, or, in reaching a given result of official action, they are required to exercise any degree of judgment, while it is proper by *mandamus* to set them in motion and to require their action upon all matters officially intrusted to their judgment and discretion, the Courts will in no manner interfere with the exercise of their discretion, nor attempt by *mandamus* to control or dictate the judgment to be given." High on Extraordinary Legal Rem., p. 50, section 42, *et seq.*

Where discretion had been given to commissioners in selecting and locating a site for the seat of justice for a county, and it was sought by *mandamus* to compel them to change the

location already made, this Court, after stating that the business had been entrusted to the discretion of the commissioners, said: "If the defendants had neglected or refused to execute the power entrusted to them we certainly might call upon them to show cause why they had been so negligent, and upon insufficient return might have issued a peremptory *mandamus.* Here, all we could do would be to command them to select the site for the permanent seat of justice for the county according to law, which, under their oaths, they say they have done." *Hill v. Bonner,* 44 N. C., 257.

In a case similar to the last one cited it was said by this Court that "It may be conceded that they ought to have selected the lot on Coleman's land, but not having done so, and having passed on and made a different selection, the writ will not lie, because it would be but a command to make a different selection from the one which they had thought proper to adopt." *Herbert v. Sanderson,* 60 N. C., 277.

In *Buckman v. Comrs.,* 80 N. C., 126, the doctrine is thus stated: "Upon the commissioners alone devolves the obligation, and upon them rests the responsibility of deciding upon the sufficiency of the bond, and under the penalty of incurring a personal liability as a surety for taking a bond known or believed to be insufficient. We can compel them to proceed and act, but we cannot control or interfere with the honest exercise of their judgment and discretion." That case cites and approves what is said by Tapping and High which has already been mentioned by us. See also *Young v. Jeffreys,* 20 N. C., at p. 221; *State v. Moore,* 46 N. C., at p. 279; *Taylor v. Comrs.,* 55 N. C., at p. 145, 64 Am. Dec., 566; *Railroad v. Jenkins,* 68 N. C., 504; *County Board v. State Board,* 106 N. C., 81. Consulting the English cases we find that there are many in which this precise question has been presented for adjudication. The uniform course

of decisions has been to deny the writ when there is any discretion.

In *Rex v. Justices,* Sayer Rep., 216, *Ryder, C. J.,* presiding in the Court of King's Bench and speaking for the Court upon a rule to show cause why an information for a misdemeanor should not be filed, said: "It has been truly said that the power of licensing public houses is so absolutely in the discretion of the justices of the peace that this Court will never award a *mandamus* for the licensing of a public house; but it is equally true that the abuse of a discretionary power ought to be more severely punished than the abuse of a power which is not discretionary. In the present cases it appears manifestly that the power of licensing public houses was very grossly abused." The rule was made absolute, that is, the refusal, under the circumstances, was held to be indictable but not to present a case for *mandamus.*

In *Rex v. Young,* 1 Burrows, 560, *Lord Mansfield,* sitting in the same Court, made a like ruling and said, "There was no pretense upon any other foot than that of criminality to make a rule upon the justices, who have a discretionary jurisdiction given them by the law. But though discretion does mean and can mean nothing else but exercising the best of their judgment upon the occasion that calls for it, yet if this discretion is wilfully abused it is criminal and ought to be under the control of the Court." He then states that the Court cannot review the reasons of the justices by appeal or by overruling their discretion, but that the control of the Court could be exercised only by an indictment or perhaps by civil action at the instance of the party injured.

The Supreme Court of the United States has frequently had similar questions before it for decision, and has invariably held that when there is discretion *mandamus* will not lie to control or reverse it. In *Gaines v. Thompson,* 7 Wall., 347,

that Court, through *Miller, J.,* said: "The Court could not entertain an appeal from the decision of one of the secretaries nor revise his judgment in any case where the law authorized him to exercise judgment or discretion. Nor can it by *mandamus* act directly upon the officer and guide and control his judgment or discretion in the matters committed to his care in the ordinary exercise of his official duties." (Citing cases.) "It may, however, be suggested that the relief sought in all those cases was through the writ of *mandamus,* and that the decisions are based upon the special principles applicable to the use of that writ. This is only true so far as these principles assert the general doctrine that an officer to whom public duties are confided by law is not subject to the control of the Courts in the exercise of the judgment and discretion which the law reposes in him as a part of his official functions. Certain powers and duties are confided to those officers, and to them alone, and however the Courts may, in ascertaining the rights of parties in suits properly before them, pass upon the legality of their acts, after the matter has once passed beyond their control there exists no power in the Courts, by any of its processes, to act upon the officer so as to interfere with the exercise of that judgment while the matter is properly before him for action. The reason for this is that the law reposes this discretion in him for that occasion, and not in the Courts. The doctrine therefore is as applicable to the writ of injunction as it is to the writ of *mandamus.*" To the same effect are *Cox v. U. S.,* 9 Wall., 298, and numerous cases therein cited.

The rule is strongly stated in the recent treatise (Bailey on Jurisdiction, Vol. II, section 572), as follows: "That the writ will not lie to control judgment or discretion which has been reposed elsewhere is a principle of universal recognition. The judgment and discretion thus conferred is personal to

the Court, body or person, and no Court can substitute its own judgment and discretion for theirs."

This Court in *Ewbank v. Turner,* 134 N. C., 77, was required to pass upon the right of the plaintiff to a *mandamus* to compel the defendants, the Examining Board of the State Dental Society, to issue to him a certificate of proficiency so that he could practice dentistry in this State. We denied his right to any such relief by *mandamus, Chief Justice Clark,* for the Court, saying: "The granting a certificate to practice involves matters of judgment and discretion on the part of the board and will not be enforced by *mandamus,*" which "cannot be used as a writ of error to revise and reverse erroneous judgments of a subordinate tribunal, and the Court 'will not and cannot look into the evidence of facts upon which the judgment of the board was based, for the purpose of determining whether the conclusions drawn from it were correctly or incorrectly formed.'" See also, *Wise v. Bigger,* 79 Va., 269.

While there may be authorities to the contrary elsewhere, the result of judicial decision in this State is that the body clothed with the discretion cannot by any process of the Court be compelled to do anything but exercise that discretion—to act in accordance with the law—and while the Court may do this, it has no power or jurisdiction to direct the course the exercise of the discretion shall take in order to bring about any given result. It cannot order a license to issue, but its coercive power is exhausted when it requires them to inquire and decide, by the fair and honest exercise of their judgment, whether the applicant is entitled to license or not.

The next question to be considered is whether the Act of 1903, called in the argument the Watts Law, has changed the law in any material respect so as to render the foregoing principles inapplicable. After a careful examination of that act our conclusion is that it has not, but that it has, in all

material respects, so far as the question now under consideration is concerned; the law in every essential particular is the same now as it was before that act was passed.

The Act of 1903 provides that liquors shall not be sold except in incorporated cities and towns wherein the sale is not now or hereafter prohibited by law, with certain exceptions not applicable in this case. It then provides for an election to be held in any city or town upon certain conditions being complied with, and declares that if a majority of votes be cast in favor of the sale of liquors "the Board of County Commissioners of the county and the governing board of such city or town shall grant license to sell liquors in such city or town to all proper persons applying for the same according to law," the license to be granted until another election reversing the result of the voting; but no person is authorized to sell liquors even when such an election has been held and resulted in favor of the sale of liquors in the city or town "except upon a full compliance with the conditions and requirements which may now or hereafter be imposed by law."

We think it clearly appears from the language of the act that it was not intended to change the method of granting license to sell liquors. The mere fact that there has been a majority of votes cast at an election in favor of the sale of liquors does not make it mandatory upon the commissioners to grant license upon the mere compliance with certain requirements of the act, but it merely authorizes the board to grant license under the general law, when, if there had been an unfavorable vote, they could not do so. They have now the same discretion that they had before the act was passed. The words "shall grant license" used in the act, do not withdraw from the board the discretion it had under the general law, but was intended simply to confer authority which should be exercised in strict subordination to the gen-

eral law.    This is so on principle and authority, as we think. A statute will not be construed to repeal or even to modify another statute unless the intention so to do appears, or unless such a construction is required on account of a conflict between the provisions of the two statutes, but if they can be reconciled so that both can have effect this will be done, as that is presumed to have been the intention.    There is everything in this statute to show that the intention was as we have above stated it to be.    There is no conflict, and the two acts may well stand together and have full force and effect in every part of each of them.

But the question as to the true interpretation of the act has, it seems to us, been virtually decided by this Court in a case presenting facts substantially the same as those in the case at bar.

In *Comrs. v. Comrs.*, 107 N. C., 335, an election had been held in the town of Maxton, under and by virtue of the provisions of sections 75 and 76 of chapter 25 of the Private Acts of 1887, to determine whether liquors should be sold in that town.    The act provided that if the majority of the votes be "for license" then the commissioners *shall* grant license, but not otherwise.    It was contended in that case, as it is now contended in this, that these were words of command, but this Court held that they did not change the law in respect to the discretion of the commissioners under the general act.    The case is directly in point, and must control in the construction of the Act of 1903.    Indeed, no two cases could be more alike in respect to the precise question presented in each.    But if we did not have the authority of that case to support our ruling, we would not hesitate to hold upon other considerations than those already stated that the Act of 1903 clearly did not, and was not intended to, change the law so as to require the commissioners to issue license without exercising their discretion, when

a majority of the votes cast at any election held in accordance with its provisions were in favor of the sale of liquors. Section 2 of the act makes it unlawful for any person to sell liquors in any incorporated town without first obtaining a license as provided by law, both from the county and town commissioners, and even when a favorable vote has been cast at an election held under the act an application must be made "according to law," and there must be "a full compliance with the conditions and requirements which may now or hereafter be imposed by law" (section 11), and by section 66 of the Revenue Act (Acts 1903, chapter 247) it is further provided that "in such towns and cities where the qualified voters shall hereafter, under a special act of the General Assembly, vote in favor of license, then the County Commissioners shall grant an order to the Sheriff to issue license subject to all the provisions of this section," one of which provisions is that upon application duly made, and a full compliance with the requirements as therein stated, "the commissioners *may* grant an order to the Sheriff to issue such license (italics ours). Even if the word "shall" had been used throughout, instead of the word "may," we have seen that it would have reposed a discretion in the commissioners. (*Attorney-General v. Justices, supra,* and *Muller v. Comrs., supra*). It is interesting to note the varying phraseology used in the statutes concerning the sale of liquor, denoting perhaps the fluctuations of public sentiment upon this question. The law as contained in the Revised Statutes and the Revised Code, which was construed in the cases of *Attorney-General v. Justices* and *Muller v. Comrs.,* remained as it was there written without any substantial alteration until by the Act of 1893, chapter 294, section 33, it was changed so as to read: "Upon the filing of such application and affidavit, the commissioners shall, without the exercise of discretion, grant an order to the

Sheriff to issue such license." And this continued to be the law until by the Act of 1897, chapter 168, section 34, the words "without the exercise of discretion" were stricken out, and the words "may grant" substituted for the words "shall grant." Whether this change in the form of expression was intended to confer upon the commissioners an absolute discretion, that is, a larger discretion than they before had, as contended by defendant's counsel, we will not undertake to decide, as it is not necessary to do so in order to dispose of this appeal. It is sufficient for us now to hold, as we do, that the commissioners still have a discretion to grant or refuse license, and, while this discretion must be exercised in a manner fair, candid and unprejudiced, and not arbitrary, capricious or biased, much less warped by resentment or personal dislike, it cannot be controlled by *mandamus.* The Court can only insist on a conscientious judgment being used in the exercise of the power of choosing or rejecting, but cannot itself exercise the power nor substitute its own conscience for that of the board, or its own sense of fitness for the approval or disapproval of that other tribunal, for to do so would be in direct violation of the statute. In passing upon the question whether they will or will not grant a license, "they have," in the language of this Court, "a limited legal discretion, and may consider all questions and matters which pertain to the welfare of the community." *Mathis v. Comrs.,* 122 N. C., 416. But this does not mean that they may use this discretion for the purpose of advancing or vindicating their own views or opinions upon the general policy of selling liquor. This policy has been settled by the decision of the Legislature and the vote of the people to which they must yield a ready obedience, and the discretion must therefore be exercised by them in strict submission to this declared policy, and with a scrupulous regard to the right of the applicant to have a

fair and impartial hearing, and a just decision, whether for him or against him, and, subject to those limitations, they are a law unto themselves.

Counsel for the plaintiff in their well-prepared brief urge upon our attention the case of *Loughran v. Hickory,* 129 N. C., 281, as an authority sustaining the ruling of the Court below, but we do not agree with the counsel. In that case the Court distinctly recognizes the right of the board, in the exercise of its discretion, to pass, not only upon the fitness of the applicant and the suitableness of the place, but also upon "other matters which might possibly arise." Surely the Court in that case did not intend to overrule *Attorney-General v. Justices, Miller v. Comrs.,* and the other cases holding that the commissioners had a discretion which could not be taken from them by *mandamus,* without even referring to those cases. We rather think that in that case the Court intended to adhere to its previous decisions upon the same question.

·One question still remains to be considered: Was the particular judgment rendered by the Court erroneous in any view of the case. We think it was, even if the Court could control the discretion of the commissioners. In the first place, the Court required the board simply to find whether the building is suitable, and upon the finding that it is commands the board to issue license upon the payment of the tax, and if after hearing testimony as to the suitableness of the building they refuse or fail to make an order for the license to issue, then to show cause why a peremptory writ of *mandamus* should not issue. The judgment of the Court is based entirely upon the theory that after finding that the applicant is a fit person, and that the building is suitable, and the other recited facts, the commissioners have no discretion left in the matter. This is an error, for the statute expressly provides that even when those facts are found the

commissioners *may* grant license, and not that they *must* do so. If it had been intended to take away from them all discretion upon such a finding the Legislature would have used not merely a word importing permission or one imply- ing the exercise of a discretion, but a word of command. It was therefore in contravention of the statute thus to deprive them of their right to exercise that discretion. In the sec- ond place, the defendants have made a full and frank avowal in their answer of what they did in passing upon the appli- cation, and they aver that each application was fully and fairly investigated and carefully considered by them, and that they refused to grant the order for the license to issue to the plaintiff in the exercise of the sound legal discretion vested in them by the law. It appears from the answer that the defendants have done their full duty in the premises.

The *mandamus* act (The Code, section 623) provides that when an issue of fact arises before the Judge who has juris- diction in a case like this, which is not brought for the enforcement of a money demand, it shall be the duty of the Court, upon the motion of either party, to continue the action until said issue of fact can be tried by a jury. The plaintiff did not see fit to avail himself of this provision of the law but elected rather to move, upon the pleadings and the admission of the defendants that plaintiff is a proper person to sell liquors, for a *mandamus.* This was in the nature of a demurrer *ore tenus* to the answer, which involves the admission of the facts set out in the answer. The plaintiff had the right to adopt this course, but he must, in this Court, be held to the course he saw fit to pursue in the Court below, and this was the view taken by the Judge as to the effect of plaintiff's motion, for it was held that, notwithstanding the averments of the answer, the plaintiff was entitled to a *mandamus* if it was found by the board that the proposed place of sale is a suitable one. In *Comrs. v. Comrs.,* 107

N. C., 335, a similar answer was filed and the plaintiff demurred to the answer. The demurrer was overruled and the action dismissed, and that ruling was affirmed by this Court. There is no difference in principle in such a case as this between a demurrer to the answer and a motion for judgment upon the answer, which, as we have said, is a demurrer *ore tenus.* In *Attorney-General v. Justices, supra,* the plaintiff filed his petition for a *mandamus* and an alternative writ was issued. The return to the writ was not traversed by the plaintiff, but he moved for a peremptory writ upon the ground that the return or answer to the alternative writ, which merely stated that the justices had refused to grant a license to any person, although plaintiff was admitted to be a proper person, was insufficient and entitled him to a license if one were to be granted at all; but the Court refused to issue the writ and dismissed the action with costs against the plaintiff. When, as in this case, the plaintiff moves for judgment upon the pleadings, and introduces no evidence to sustain the allegations of his complaint, we must, under the *mandamus* act, necessarily assume the facts to be as stated in the answer and, upon those facts, we now adjudge that the plaintiff is not entitled to the writ of *mandamus,* and the case must therefore be remanded with directions to dismiss the action.

Error.

DOUGLAS, J., dissenting.