STATE v. BOARD OF COMMISSIONERS.

(No. 938; Decided January 3rd, 1919; 177 Pac. 130.)

INTOXICATING LIQUORS—ISSUING LICENSE—DISCRETION—INCORPORATED TOWNS.

1. Comp. Stats., 1910, Section 1578, Subdiv. 9, having granted to town councils of incorporated towns power to license, regulate, or forbid the sale of intoxicants, any discretion of county commissioners under Comp. Stats., 1910, Section 2833, as to issuing a liquor license, does not include a right or power on the part of the commissioners to refuse the issuance of a license solely because of opposition to the operation of liquor saloons.

ERROR to District Court of Platte County, HON. WILLIAM C. MENTZER, Judge.

Mandamus proceedings upon the relation of Fred W. Rehder against the Board of County Commissioners of

Platte County and others. Writ refused and relator brings error.

*Kinkead & Henderson,* for plaintiff in error.

An inferior tribunal may be required to exercise its judgment or discharge its functions, but its judicial discretion cannot be controlled by mandamus. (Section 5055, Comp. Stats. 1910.) County Commissioners have power to issue licenses. (Section 2833, Comp Stats. 1910; Laws 1901, Ch. 43; Laws 1909, Ch. 7.) Town councils have power to regulate license or forbid sales of intoxicating liquors. (Section 1578, Subdiv. 9, Comp Stats. 1910. Statutory construction, 36 Cyc. 1146. Curry v. Lehman, 47 So. 18.) Counties distinguished from cities. (11 Cyc. 342.) Limitation of commissioners' power. (11 Cyc. 588; 2 Wyo. 346; 37 Pac. 483.) Board cannot act capriciously. (State v. New Orleans, 67 L. R. A. 70; Re. Christianson, 43 Fed. 243; Noble v. Cheyenne, 2 Wyo. 417.) Arbitrary refusal to act will be enforced by mandamus. (15 R. C. L; Smith v. Butters, 32 L. R. A. 343; in re. Phillips, 116 N. W. 950.) The word "shall" precludes discretion. (Potter v. Homer, 59 Mich. 8; Braconier v. Packard, 136 Mass. 50.) The words "may" or "it shall be lawful" imply discretion. (Ex parte Whitington, 34 Ark. 394.) Where the word "may" is used in conferring power and the public, or a third person, has an interest in the exercise thereof, the exercise becomes imperative. (McLeod v. Scott, 21 Ore. 94; Smith v. King, 14 Ore. 10, 12 Pac. 8; People v. Commonwealth, 130 Ia. 482, 6 L. R. A. 161.) There can be no discretion where the ordinance stipulates that the mayor shall grant licenses to applicants furnishing evidence of good character and offering required bonds in fee. (People v. Creiger, 138 Ill. 401; People v. Homer, supra; State v. New Orleans, 67 L. R. A. (La.) 70; People v. Commissioners, supra.)

*C. A. Paige,* for defendants in error.

Under Section 2833 the Board of County Commissioners are vested with discretionary powers to grant or refuse to grant liquor license. Board of County Commissioners have

discretionary power in granting or refusing to grant license. (Smith v. County Com'rs, 112 Pac. 809, 32 L. R. A. (N. S.) ; Anderson v. County Com'rs, 125 Pac. 188, 25 Pac. 739; Sullivan v. County Com'rs, 125 Pac. 191; Anderson v. County Com'rs, 125 Pac. 193; State v. Halt County Court, 39 Mo. 521, 104 Mo. 685; Muller v. Commissioners, 89 N. C. 172; Crowley v. Christensen, 137 U. S. 86; In re. Hoover (D. C.), 30 Fed. 51; Atty. General v. Justices, 27 N. C. 315; Gus Jugenheimer v. State, 81 Neb. 836, 831; Dunbar v. Frazer, 78 Ala. 538; State of Minn., 60 Minn. 510; Harrison v. People, 222 Ill. 150.) The case of Smith v. County Com'rs, 122 Pac. 809, cites nearly all of the above cases and seems to be a case where about the same facts are presented as in the case at bar. (58 Hun (N. Y.) 495; 96 Mich. 193, 21 L. R. A. 580.)

BEARD, JUSTICE.

There is but one question in this case, and that is, whether or not the board of county commissioners can be required by mandamus to issue a license to the relator for the carrying on and conducting of the business of a retail liquor dealer in the incorporated town of Guernsey, in Platte county, the admitted facts being that relator duly and regularly made application to said board for such license; that he was a man of good moral character, a resident and freeholder of said county, and was able, ready and willing to pay for said license. That the town council of said town by a resolution duly made, presented to and filed with said board, approved and recommended the granting of such license to relator. That certain remonstrances were made orally to and in the presence of said board against the granting of any license which would authorize the trafficking in intoxicating liquors in said town; that said remonstrances were not directed against any individual applying for license, or against the good character or other qualifications of the applicant, but on the ground that the remonstrants claimed that it was neither wise nor for the best interests of the community that saloons be operated in said town.

The board refused to issue a license to relator; but it is not claimed that it did so because it found or decided that he was not a man of good moral character, was a non-resident or not a freeholder. It was stipulated that one member of the board voted against the license because of said remonstrances and for no other reason. That another member of the board voted against granting the license for no other reason than that he was and is opposed to the existence of saloons in Platte county, without regard to the character of the conductors thereof. The other member of the board voted in favor of granting the license.

The district court refused to issue a writ of mandamus requiring the board to issue a license to relator and gave judgment against him for costs. He brings error.

Counsel for relator contend that as it is admitted that relator was a man of good moral character, a resident and freeholder of the county, the board of county commissioners had no discretion in the matter and that it was the duty of the board to grant the license, and that their action in refusing the license was capricious and arbitrary as disclosed by the admitted facts. On the other hand, the county attorney insists that the board is given a wide discretion in the matter and that its action cannot be conrolled by mandamus.

The provisions of our statutes in so far as they are here involved and which we are called upon to construe are as follows: "No person or persons within this state, directly or indirectly, in person or by agent or employee, shall vend, sell, barter or dispose of for any pecuniary advantage, any spirituous, malt, fermented or intoxicating liquors or wine without first obtaining a license therefor as provided in this chapter." (Sec. 2832, Comp. Stats. 1910.)

"Before any license shall be granted for the sale of liquors, the applicant therefor shall file his written application for such license in the office of the county clerk. Said application shall contain a full and accurate description of the building in which liquors are to be sold, and a full and accurate description of the premises on which such building is located. All applications for county license shall be heard at

the second regular meeting of the board of county commissioners which shall occur subsequent to the filing of the application; Provided, however, That in counties in which the boards of county commissioners are not required by law to meet monthly, notice of such application with a full and accurate description of the buildings and premises where liquors are intended to be sold, shall be given by publishing the same for four weeks successively in some newspaper published and of general circulation in the county, or if no newspaper is published therein, by posting for four weeks as aforesaid written or printed notices in five of the most public places in the vicinity of the said premises, and such application in such county shall be heard at the next regular meeting of the board of county commissioners after the completion of said time. All county licenses shall be granted by the boards of county commissioners of the several counties and they shall have power to grant licenses only to persons of good moral character who are freeholders in this state; Provided, That said board shall refuse to grant any license or extend any existing license for the sale of liquors at any place outside of incorporated cities and towns." (Sec. 2833, Comp. Stat. 1910.)

"All licenses issued by any county in this state for the sale of liquors, * * * when the licensee shall be a resident of and carrying on the business for which he is licensed within the corporate limits of any incorporated town, city or village, the license shall be collected by the city marshal or collecting officers of such incorporated town, city or village, for the purposes mentioned in this chapter. It shall be the duty of such collecting officer, between the first and fifteenth days of each month, to pay into the treasury of such incorporated town, city or village, all money collected for such licenses, which moneys shall be applied to the general revenue purposes of such incorporated town, city or village." (Sec. 2826, Comp. Stats. 1910.) In the law governing incorporated towns they are given the power "to license and regulate or forbid the sale of spirituous and intoxicating liquors within such town, or within one mile of

the outer boundaries thereof." (Subdivision Nine, Sec. 1578, Comp. Stats. 1910.) The legislature having conferred upon incorporated towns express authority to license or forbid the sale of liquor therein, it would appear that the maxim *"expressio unius est exclusio alterius"* is applicable here. In Broom's Legal Maxims it is said: "that no maxim of the law is of more general and uniform application; and it is never more applicable than in the construction and interpretation of statutes. Whenever a statute limits a thing to be done in a particular form, it necessarily includes in itself a negative, viz: that the thing shall not be done otherwise." (19 Cyc., 23.) Considering those several provisions of the statutes, we do not think the legislature intended to give the county commissioners unlimited discretion in the matter. But any doubt we might entertain from a consideration of the language of the several statutory provisions has been removed by an investigation of the history of the legislation on the subject, and particularly of said Section 2833. Prior to 1884 it was made the duty of the sheriff of each county to furnish all licenses, and collect the money for the same. (Sec. 1, Ch. 76, Comp. Laws 1876.) All moneys collected for licenses constituted a portion of the general county fund. (Sec. 5, id.) The licenses were prepared by the county clerk and delivered to the sheriff of the county in which issued. (Sec. 2, id.) In 1884 it was enacted that thereafter all licenses issued by Laramie county for the sale of liquor, and certain other licenses, for carrying on such business within the limits of any incorporated town, city or village within said county, should be collected by the marshal or collecting officer thereof and be paid into its treasury and become part of its general revenue. (Ch. 55, S. L. 1884.) In 1888 that provision was made to apply to all counties of the Territory. (Ch. 44, S. L. 1888.) The law so remained until 1901, and it is conceded that neither the sheriff or other collecting officer, nor the county clerk had any discretion in the matter and were required to furnish a license to anyone applying and paying therefor. In 1901 a bill was introduced in the Senate (Senate File No. 25) to

amend and re-enact Section 2163, Revised Statutes of 1899
(which as amended and re-enacted is now Section 2833,
Comp. Stats. 1910), which bill after providing for the filing
of written application for such license in the office of the
county clerk, notice, time of hearing, etc., as now contained
in Section 2833, Comp. Stats. 1910 (with an immaterial
change as to notice), contained the following provision,
viz:

"Any person or persons shall have the right to file with
the County Clerk written objections to the granting of any
application. The application, whether objected to or other-
wise, shall be heard upon evidence introduced at the next
regular session of the County Commissioners after the com-
pletion of the notice aforesaid, and any person interested
shall have compulsory process for witnesses. The Board of
County Commissioners, upon hearing the evidence, shall
have the discretion to refuse a license to sell liquors in any
particular place or locality where it shall seem to them to be
contrary to public policy or imprudent or hazardous that the
business of selling or disposing of liquors shall be carried
on; and upon hearing the evidence shall have the discretion
to refuse a license to any person whom they may deem un-
fit to entrust with the said business. If, upon the evidence,
the said Board of County Commissioners shall deem the
place and person fit, they may grant the license prayed for."

Having been passed by the Senate, it was amended in the
House by striking out the above quoted provision and insert-
ing in lieu thereof the following: "All county licenses shall
be granted by the board of county commissioners of the
several counties and they shall have power to grant licenses
only to persons of good moral character who are freeholders
in this state; Provided, however, That said board shall have
power to refuse any license for the selling of liquors at
any place outside of incorporated cities and towns." The
Senate refused to concur in the amendment made by the
House and the bill was sent to a conference committee con-
sisting of three members from each body, which committee
reported recommending that there be inserted in the amend-

ment made by the House the change in the notice above re-
frred to, and when so amended by the House, "that the
Senate do thereupon concur in all amendments made by the
House, including the additional amendment herein set
forth." The House amended the bill as recommended, and
it was duly passed, and approved by the Governor February
15, 1901. The only change made in that section since that
time was in the proviso which was changed by Chapter 7,
S. L. 1909, taking away the power to license saloons outside
of incorporated cities and towns, and was made to read as
contained in said section 2833, Comp. Stat. 1910.

It would seem that the legislature could not have more
clearly expressed its intention not to give to the commis-
sioners any discretion to refuse a license to an applicant
whom they found qualified as required, other than that con-
tained in the proviso. The striking out of the bill as intro-
duced, all of its provisions vesting the board with discre-
tion, except in one particular, certainly can not be construed
as a grant of further discretion. The language, "Provided,
however, that said boards shall have power to refuse any
license for the selling of liquors at any place outside of in-
corporated cities and towns", clearly implies that the legis-
lature believed and understood that without such grant the
board would be without authority to so refuse. If the legis-
lature understood that the board was already vested with
such discretion, then the proviso was of no force and mean-
ingless. "A proviso is a clause added to a statute, or to a
section or part thereof, which introduces a condition or limi-
tation upon the operation of the enactment, or makes special
provision for cases excepted from the general provisions of
the law, or qualifies or restrains its generality, or excludes
some possible ground of misinterpretation of its extent."
(Black on Interpretation of Laws, 270.) Here the proviso
was evidently intended to give to the board a discretion to
grant or refuse to grant licenses outside of incorporated cities
and towns, but not otherwise. We are of the opinion that the
fact that certain persons remonstrated against the granting of
a license to the relator for the reasons stated, or that the mem-

bers of the board or any one of them was opposed to granting any liquor licenses in the county did not legally justify the board in refusing to issue the license; and that according to the admitted facts in this case the board had no discretion in the matter. Counsel have cited many cases more or less bearing upon the question, but we find but little assistance from them on account of the difference in the language of the statutes in the several states, in many of which the board is expressly given full or limited discretion. We shall refer to a few only, cited by the county attorney. Smyth v. Butters et al., 38 Utah 151, 112 Pac. 809, 32 L. R. A. N. S. 393, is cited as in point. But we find the Utah statute contains this language: "Any application for such license may be refused for good cause, in the discretion of the board of trustees of the town, the city council of the city, or the board of county commissioners." Swift v. The People, 63 Ill. App. 453, was a case in which the ordinances provided, "The mayor of the city of Chicago shall from time to time grant licenses for the keeping of dram shops within the city of Chicago, to any person who shall apply to him in writing, upon said person furnishing sufficient evidence to satisfy him that he or she is a person of good moral character," etc. A license was refused by the mayor on the ground that the place where the business was proposed to be conducted was within a purely residence neighborhood, and that a saloon in such district would be a nuisance. The court stated that the establishment of a saloon at the place for which license was applied would be a nuisance, and held that "a court should not, by mandamus, compel the public officials to issue a license for the keeping of a saloon in a residence neighborhood, where a saloon will be a nuisance." A very different state of facts from those presented in the present case. Cases from North Carolina are cited. The latest case from that state to which our attention has been directed is Barnes v. Commissioners, 135 N. C. 27. The court in that case referred to earlier decisions, under a statute substantially like the one it was then considering, in which it had been held that the licensing officers possessed a limited legal discretion

and followed the decision in those cases. And in further support of its holding referred to the fact that in 1893 after those cases were decided the law was changed to read, "Upon the filing of such application and affidavit, the commissioners shall, without the exercise of discretion, grant an order to the sheriff to issue such license." In 1897, before the Barnes case was decided, the law was changed by striking out the words "without the exercise of discretion", and the words "may grant" substituted for the words "shall grant", indicating an intention on the part of the legislature to vest at least some discretion in the commissioners. The court saying: "But this does not mean that they may use this discretion for the purpose of advancing or vindicating their own views or opinions upon the general policy of selling liquor." Without comment on the numerous other cases cited by counsel for the respective parties, we refer to the notes to Sherlock v. Stuart, 96 Mich. 193, 55 N. W. 845, 21 L. R. A. 580. In the case at bar the town authorities of the town of Guernsey have approved and recommended the issuance of a license to relator. And it is to the town council alone that the legislature has given direct authority to prohibit the sale of liquor in the town. Whether the board of county commissioners have any discretion in the matter, or implied authority to refuse a license to a duly qualified person for any cause, we need not determine. But we are convinced that the board had no right to refuse to do so for the reasons assigned and admitted to be the only reasons for so doing.

For the reasons stated, we are of the opinion that, upon the admitted facts in this case, the district court erred in refusing the writ of mandamus as prayed for, and that the judgment should be reversed, and the cause remanded for further proceedings not inconsistent herewith.

*Reversed and remanded.*

POTTER, C. J., and TIDBALL, District Judge, concur.

BLYDENBURGH, J., being ill and unable to sit, HON. V. J. TIDBALL, Judge of the Second Judicial District, was called in and sat in his stead.