110    61
f114    58

# Jacob Christensen et al. v. Kellogg Switchboard & Supply Co.

1. CHANCERY PLEADING—*When Allegations of Bill Must be Assumed to be Correct.*—Where no answer is filed to a bill and no denial made of any of its averments, the facts as stated, so far as they are well pleaded, must be assumed to be correct.

2. EQUITY—*Ground of its Jurisdiction.*—It is upon the ground of injury to property rights that the jurisdiction of equity to interfere by injunction rests. It has no jurisdiction in matters merely criminal or immoral, and will not interfere merely to prevent violations of law.

3. SAME—*When the Commission of a Crime Will be Enjoined.*—Ordinarily a court of equity will decline to issue an injunction to restrain the commission of a crime, but a continuing injury to property or busi-

ness may be enjoined, although it may also be punishable as a nuisance or other crime.

4. INJUNCTIONS—*Properly Issued to Restrain Strikers from Intimidation and Violence.*—An injunction is properly issued to restrain strikers from gathering around their former employer's place of business. stationing themselves in the streets and alleys and approaches to such place of business, intimidating the employes of such employer who insist upon remaining at work; from maintaining what is known as a system of picketing, and from menacing and threatening his employes, whereby such employer has suffered pecuniary loss through his inability to complete his contracts.

**Bill for an Injunction.**—Appeal from the Superior Court of Cook County; the Hon. JESSE HOLDOM, Judge presiding.    Heard in the Branch Appellate Court at the March term, 1903.    Affirmed.    Opinion filed July 17, 1903.    Rehearing denied October 13, 1903.

Appellee filed its bill of complaint against Brass Workers Union 127 and others, including appellants.    The averments of the bill deemed material to the determination of the present appeal from an interlocutory order granting an injunction against appellants, are in substance as follows : The bill states that appellee has its principal place of business in Chicago, and is engaged in manufacturing and selling telephones; that it has been carrying on said business for more than five years, has invested over $500,000 in machinery and equipments, and has employed a local force of from 500 to 800 men and girls; that it has been obliged to employ a large number of mechanics, a large number of whom are members of various labor unions, with local lodges in Chicago, and has also in its employ a large number of skilled mechanics who are not associated or affiliated with any union; that a large majority of its employes are well satisfied with the wages and salaries paid them, the hours of service and general conditions of their employment, notwithstanding which the defendants wrongfully and maliciously called a strike and forced all union employes to cease work.

It is averred that May 7, 1903, James J. Lamb, business agent of the International Brotherhood of Electrical Workers, Local 376, Lee S. Fisher, business agent of the International Association of Machinists, District Lodge 8,

R. G. Crane, business agent of Brass Workers' Union 127, and J. E. Johnson, business agent of Brass Molders' Local 83, called upon complainant concerning proposed articles of agreement, drafts of which are attached to the bill, and insisted that complainant cause its officers to sign them, informing complainant that unless it did cause said several articles of agreement to be signed, said defendants would call a strike against complainant's factory, causing great loss of money and damage to complainant and its business, and would insist that said employes cease work until complainant sign said articles. Complainant avers that the terms proposed in said articles are arbitrary, unreasonable and of such a nature as to deprive complainant of the full and unrestricted supervision and conduct of its business, and would oblige it to discharge all non-union men and girls in its employ. Complainant refused to sign the proposed agreements, whereupon said Fisher, Crane and Johnson then and there gave notice that they would call a strike, and as a result 500 employes immediately left complainant's employ; that the strike has ever since continued, its purpose being to dominate and control the employment of brass workers, brass molders, electrical workers, metal workers and machinists in the city of Chicago, and prevent such mechanics from working at their trades in that city unless associated with some of said unions.

It is further averred that the appellants herein were among those who went out on said strike May 7th last, and on leaving their work gathered around complainant's said place of business and stationed themselves in the streets and alleys and approaches to said place of business, and began to intimidate the employes of said company who insisted upon remaining at work; that they inaugurated what is commonly known as a system of picketing and began a systematic course of intimidation of the persons who remained in complainant's employ; that as such employes went to and from said place of business they were stopped by said defendants and warned not to return to work for complainant; that defendants continue to surround

and picket complainant's place of business, have assumed a menacing and threatening attitude and continue to menace and threaten complainant's employes, who have been so frightened and intimidated that they refuse to continue their work, and a large number of complainant's employes who are willing and anxious to continue at work are kept away solely because of their fear of the defendants, by reason of which complainant has been prevented from carrying on its business, and is greatly and irreparably injured.

It is set forth that when the strike was inaugurated complainant sought the services of other men and girls, and a large number have endeavored to and have sought employment with complainant, but have been intercepted by defendants while on the way to said place of business for the purpose of entering complainant's employ, and have been induced by threats and unlawful persuasion to leave and not enter such employment.

It is averred that defendants are acting under the direction, instigation and advice of labor unions, with a view to a common purpose and end, to wit, to injure orator in its business, terrify its employes, and to force complainant into the execution of the articles of agreement in question; that the defendants are now surrounding said place of business and are engaged in altercation with orator's employes as they pass in and out, who are called vile names, "scab," and other opprobrious terms; that threats are used against them and their personal safety threatened unless they cease working for complainant; that some of defendants are now intimidating, terrifying and coercing complainant's said employes in numerous ways, especially by following the latter on their way home; that said defendants so patrolling and picketing are in the employ of the respective unions receiving for such services $1.50 per day.

It is further shown that complainants had heretofore entered into numerous contracts with divers persons, firms and corporations, requiring it to use every facility to complete within the time thereby required, as it can do if per-

mitted to carry on its business free from such interference and obstruction; but that it will not be able to so finish and complete its contracts if defendants continue to interfere with complainant's business, and as a result will sustain great and irreparable damage, loss and injury, against which it has no protection, relief or remedy except in a court of chancery, through the medium of this, its bill of complaint. It is further shown that in the operation of its business it is necessary to employ and complainant does employ skilled mechanics, and that if the latter or any number of them are prevented from doing their work, its business will be crippled and seriously injured, if not wholly destroyed, and its place of business compelled to remain idle at great loss and damage, which arising from cost of protecting contracts partly finished, loss of profits of customers' trade and business, and damage for contracts unperformed, can not be estimated or determined in money, together with other loss and damage which can not be fixed in money value including good will and business built up during many years of toil and industry.

It is charged that defendants and others have entered into a conspiracy against complainant to injure and are injuring complainant by strikes and boycotts, have conspired to intimidate its employes to prevent it from obtaining new employes and are so inflicting and will continue to inflict large pecuniary loss; that complainant will be obliged to cease doing business by reason of such illegal acts of defendants and to throw out of employment all those persons working for it.

It is averred that during the past year numerous and continuous strikes in the various manufacturing industries of Chicago have been in progress, and it is common report and knowledge that there have been continuous and numerous assaults committed by strikers, the effect of which has tended to intimidate mechanics and employes who are anxious and willing to remain employed; that such assaults and intimidations have become so common and generally known throughout the city of Chicago, that

mechanics and laborers, generally, have knowledge of them, and those who are ready and willing to work for your orator are greatly intimidated and in daily fear of being themselves assaulted and injured. It is charged that said defendants are pecuniarily irresponsible and not able to respond in an action at law for any damages complainant has sustained or may sustain by reason of said unlawful acts, and that such damages are not susceptible of exact ascertainment. The bill prays for an injunction.

The injunctional order appealed from recites that notices have been duly served and that the court heard arguments from counsel for the complainant, and for certain defendants; and orders that the defendants desist and refrain from in any manner interfering with, hindering, obstructing or stopping any of the business of the said Kellogg Switchboard & Supply Company, or its agents, servants or employes, in the operation of the business of such complainant; from entering upon the ground or places where the employes of said complainant are at work, for the purpose of interfering with, hindering or obstructing the business of said complainant in any manner whatsoever; from compelling or attempting to compel, by threats, intimidation, force or violence any of the employes of said complainant to refuse or fail to do their work or discharge their duties as such employes; from compelling or inducing or attempting to compel or induce, by threats, intimidation, force or violence, any of the employes of said complainant to leave the service of said complainant; from preventing or attempting to prevent any person or persons, by threats, intimidation, force or violence, from freely entering into the service and employ or continuing in the service and employment of said complainant; from compelling and inducing or attempting to compel or induce, by threats, intimidation, force, violence or persuasion, the said complainant against its will or the will of its officers employing or discharging any person or persons whomsoever; from doing any act whatever in furtherance of any conspiracy or combination to restrain or obstruct either

Christensen v. Kellogg Switchboard & Supply Co.

said complainant or any of its officers and employes in the free, uninterrupted and unhindered control and direction of its business and affairs; from ordering, asking, aiding or abetting in any manner whatever any person or persons to commit any or either of the acts aforesaid; from congregating or being upon or about the sidewalks, streets, alleys, approaches adjoining or adjacent to the premises so occupied by said complainant for the purpose of intimidating its employes or coercing said employes, or any of its officers or agents, or preventing them or any of them from rendering their services or discharging their duties to said complainant; from inducing or coercing, by threats, intimidation, force, violence or persuasion, any of the employes of said complainant to leave the service or employment of said complainant; from in any manner interfering with said complainant in carrying on its business in its usual and ordinary way; from in any manner interfering with or molesting any persons who may be employed by or who may be seeking employment with said complainant in the operation of its business; from either singly or in combination with others collecting in or about the approaches to the factory, building and place of business of said complainant for the purpose of picketing or patrolling or guarding the streets, avenues, gates and approaches to the place of business of said complainant for the purpose of intimidating, threatening, coercing any of its employes or any person or persons seeking employment with it; from interfering with its employes in going to and from their daily work, at its place of business, or wherever said employes may be employed in the business of said complainant; from either going singly or collectively to the homes of said employes of said complainant, or any or either of them, for the purpose of intimidating, coercing or persuading any or all of said employes to leave the employment or service of the complainant, or from entering the employment or service of the complainant; and from intimidating or threatening in any manner the wives and families of said employes at their homes or elsewhere, until the further order of this court.

DARROW & MASTERS, attorneys for appellants.

There is nothing illegal in a strike, that is, in a simultaneous quitting of employment by a number of employes in pursuance of an agreement. Commonwealth v. Hunt, 4 Met. 111; Carew v. Rutherford, 106 Mass. 1; Barr v. Essex Trades Council, 53 N. J. Eq. 101.

The exercise by a person of a legal right does not become illegal because the motive of the action is improper or malicious. Allen v. Flood, L. R. (1898), A. C. 1.

A court of equity can not enjoin the commission of a crime. C. S. C. Co. v. Board of Trade, 92 Ill. App. 605.

A court of equity has no jurisdiction in matters merely criminal or immoral, but leaves the correction of those matters to the Criminal Court. The remedy at law is presumed to be adequate, but if it is not, relief must come from the law-making power and not from the courts. People v. Condon, 102 Ill. App. 449.

TENNEY, COFFEEN & HARDING and ALLEN & WESEMANN, attorneys for appellee; JAMES H. WILKERSON, of counsel.

The combination of which the defendants were members, entered into for the purpose of inflicting injury upon the complainant and thereby compelling it to do some act which, in its judgment, its interest did not require, was illegal. Acts done in furtherance of the illegal purpose of the combination take character from that purpose. The law which allows workingmen to combine for the purpose of obtaining a lawful benefit to themselves gives no sanction to combinations which have for their immediate purpose the hurt of another. Vegelahn v. Guntner, 167 Mass. 92; Plant v. Woods, 176 Mass. 492; Moran v. Dunphy, 177 Mass. 485; O'Neil v. Behanna, 182 Pa. St. 236; Flaccus v. Smith, 199 Pa. St. 128; Coons v. Chrystie, 53 N. Y. Supp. 668; Curran v. Galen, 152 N. Y. 33; Barr v. Essex Trades Council, 53 N. J. Eq. 101; Frank v. Herold (N. J.), 52 Atl. Rep. 152; Jersey City Printing Co. v. Cassidy, 53 Atl. Rep. 230; Lasher v. Littell, 202 Ill. 555.

A suit in equity may be maintained to prevent the persons concerned in such an illegal combination as the one

Christensen v. Kellogg Switchboard & Supply Co.

set forth in the bill in this case from carrying the same into effect, when the damages would be irreparable, or when such a proceeding is necessary to prevent a multiplicity of suits.     The facts stated in the bill in this case bring it within this rule.     3 Pom. Eq. Juris., Secs. 1338, 1346, 1357; Hopkins v. Oxley Stave Co., 83 Fed. Rep. 912; Barr v. Essex Trades Council, 53 N. J. Eq. 101; Flaccus v. Smith, 199 Pa. St. 128; Frank v. Herold (N. J.), 52 Atl. Rep. 152.

The acts prohibited by the injunction must be considered in connection with the unlawful purpose for which it is charged they are being committed.     All of the acts forbidden become unlawful when done for the purpose for which it is charged they are done.

Interfering with and obstructing complainant's business. Frank v. Herold, 52 Atl. Rep. 152; Jersey City Printing Co. v. Cassidy (N. J.), 53 Atl. Rep. 230; Barr v. Essex Trades Council, 53 N. J. Eq. 101.

Threats, intimidation, persuasion.     In Re Debs, 158 U. S. 564; Frank v. Herold (N. J.), 52 Atl. Rep. 152; Ex Parte Richards, 117 Fed. Rep. 658; Union Pacific Ry. Co. v. Ruef, 120 Fed. Rep. 103; Jersey City Printing Co. v. Cassidy (N. J.), 53 Atl. Rep. 230; Plant v. Woods, 176 Mass. 92; Moran v. Dunphy, 177 Mass. 492; O'Neil v. Behanna, 182 Pa. St. 236; Flaccus v. Smith, 199 Pa. St. 128; Barr v. Essex Trades Council, 53 N. J. Eq. 101; Taff Vale Railway Co. v. Amalgamated Society of Ry. Servants, L. R. (1901), A. C. 426.

The fact that the acts committed by the appellants constitute criminal offenses does not deprive a court of equity of jurisdiction to enjoin such acts, where their continuance will result in irreparable injury to property rights.     In re Debs, 158 U. S 564; Vegelahn v. Guntner, 167 Mass. 92; Allis Chalmers v. Reliable Lodge, 111. Fed Rep. 264; Union Pacific Ry. Co. v. Ruef, 120 Fed. Rep. 102; Shoe Company v. Saxey, 131 Mo. 212; Coeur d'Alene C. & M. Co. v. Miners' Union, 51 Fed. Rep. 260.

OPINION PER CURIAM.

This is an appeal from an interlocutory order granting

an injunction. We are asked by appellant's counsel for an immediate decision. The cause has received the very careful consideration of the full court. It comes here at the close of the term, when changes have been occurring in the court, and there is unusual pressure upon our time 'and attention. , Without, therefore, undertaking now a full discussion of all the questions involved, we will indicate as briefly as possible the grounds upon which we find it necessary to affirm the order complained of.

The injunction was granted upon the face of the bill. No answer was filed and no denial made of any of its averments. The facts as stated, so far as they are well pleaded, must be assumed to be correct. It appears, therefore, that persons known as business agents for several of the labor unions, to which a large number of appellee's employes belonged, presented to appellee and demanded its signature to proposed articles of agreement. These agreements provide, among other things, that appellee shall employ no one but members of the designated unions; that the said organizations shall appoint a steward for each craft in each factory of appellees, whose duty it shall be to see that the men working in the factory belong to the unions; that the business agents of the unions shall have the privilege of interviewing any member in the offices of appellee during business hours; that matters in dispute shall be arbitrated, and that a sympathetic strike to protect union principles shall not be considered a violation of the agreements.

It is said in behalf of appellee that these proposed agreements are unreasonable from every prudent business standpoint, and are unjust and arbitrary to the independent workingman. However that may be, agreements to employ none but union labor have been held in this state to be invalid in some cases, as when made by a board of education or by a city. Adams v. Brenan, 177 Ill. 194–201; Holden v. City of Alton, 179 Ill. 316–323. In the latter case it is said that "such a combination or agreement is in violation of common right, tends to create a monopoly and can not be tolerated." In Curran v. Galen, 152 N. Y. 33,

Christensen v. Kellogg Switchboard & Supply Co.

it was said, *per curiam*, that the organization of working-men is not against public policy, but " is proper and praise-worthy and perhaps falls within that general view of human society, which perceives an underlying law that men should unite to achieve that which each by himself can not achieve, or can achieve less readily. But the social principle which justifies such organizations is departed from, when they are so extended in their operation as either to intend, or to accomplish injury to others. Public policy and the interests of society favor the utmost freedom in the citizen to pursue his lawful trade or calling." . The court holds that to carry into effect an agreement like those under con-sideration, requiring all employes to be members of a union, " would conflict with that principle of public policy which prohibits monopolies and exclusive privileges;" that it would " impoverish and crush a citizen for no reason connected in the slightest degree with the advancement of wages or the maintenance of the rate.". In the present case, as was con-ceded by appellants' counsel, the proposed agreement was without any binding force upon those who were demanding its execution by appellee, and could not be enforced against the so-called parties of the second part thereto. Neverthe-less, it was the right of appellee to employ union or non-union men as it might prefer, and we are not to be under-stood as holding that a request to appellee to enter into an agreement to employ none but union men was in itself illegal.

The bill of complaint sets forth that the demand for its signature was accompanied by a threat that unless it should be signed by appellee the latter's employes would be called out on a strike and would cease work until it should be signed, and as a result of appellee's refusal to sign 500 of its employes left its employ. That these employes had a right to leave their work as they did can not be doubted. Although it may be that no question of wages or hours of labor was involved, the right of men to leave their employment for good reasons or bad reasons, where no contract is broken, is as perfect and complete as is the

correlative right of all men to seek employment wherever they can find it, without let or hindrance, whether belonging to labor organizations or not. These are common rights secured by the constitution, which by its terms is established " to secure the blessings of liberty " to all alike. That there was a strike and appellee's employes left their employment, affords, therefore, no reason in itself for equitable interference, and it is not sought on that ground.

It appears, however, from the bill, and accompanying affidavits, that the strike was followed not only by intimidation and threats against the personal safety of those remaining in appellee's employ or seeking such employment, but by actual assaults and violence; that these threats and assaults have been made by persons, some of whom are regularly employed by the unions as pickets; that mechanics and employes anxious to remain at work have been greatly intimidated and appellee has been thus prevented from obtaining help to carry on its business, and is suffering and continuing to suffer large pecuniary loss. The facts as stated indicate that appellee's place of business is undergoing a siege not unlike a medieval citadel in time of war. It is cut off, so far as is possible for the besiegers to do so, from reinforcing its supply of labor, its employes are followed and assaulted as in a state of war, and it is averred that the system employed includes continuous and numerous assault upon those seeking to work for appellee without connecting themselves with labor organizations, and that this being matter of common knowledge, those ready and willing to work are greatly intimidated and in daily fear of being assaulted and injured.

According to the bill these are the means employed to compel appellee to enter into an agreement, to effectuate which would conflict with public policy in that it would restrict the lawful right of the individual either to work for a livelihood, or to employ whom he chooses.

It is upon the ground of injury to property rights that the jurisdiction of equity to interfere by injunction rests. It has no jurisdiction in matters merely criminal or im-

moral. It will not interfere merely to prevent violations of law. People v. Condon, 102 Ill. App. 449–457. In Vegelahn v. Guntner, 167 Mass. 92, will be found numerous citations of authorities, and a discussion *pro* and *con* of the general subject. It is there said :

" Nor does the fact that the defendants' acts might subject them to an indictment prevent a court of equity from issuing an injunction. It is true that ordinarily a court of equity will decline to issue an injunction to restrain the commission of a crime; but a continuing injury to property or business may be enjoined, although it may be also punishable as a nuisance or other crime." (Citing many authorities.) See, also, Beck v. Teamsters' Protective Union, 118 Mich. 497–518; Shoe Co. v. Saxey, 131 Mo. 213–220; Barr v. Essex Trades Council, 53 N. J. Eq. 101; Flaccus v. Smith, 199 Pa. St. 128–136.

Indeed, we understand appellants' counsel to concede that as the law is, without reference to what they think it ought to be, appellee is entitled to an injunction of some kind in this case. It is insisted, however, that the injunction as granted is too broad.

Complaint is made that as issued it forbids a number of things which do not violate the law of equal freedom; that " every man has freedom to do all that he wills, provided he infringes not the equal freedom of any other man." This last statement applies with equal force to employer and employe, to union and non-union men. The law recognizes and can recognize no distinction. It is said that this injunctional order forbids expressly and by inference a number of things which do not violate the law of equal freedom; that words are not trespasses, that persuasion is permissible, and that picketing and patrolling the streets are not unlawful. The bill and affidavits, however, show that the " persuasion " employed by appellants was and is not peaceable. It is accompanied not only by a show of overwhelming force, but by actual violence. Such persuasion, according to the bill, is undertaken and carried on by unlawful means in pursuance of a conspiracy or combination, the purpose of which is stated

to be to deprive appellee of the right to conduct its own business, carry out its contracts, and for the purpose of inflicting pecuniary loss upon appellee to such an extent as to compel it to sign the proposed articles of agreement. This is done by parties alleged to be pecuniarily irresponsible. It would be idle to say that " persuasion " of the character described in this bill is of a lawful kind. Efforts to convince the judgment by peaceable argument or persuasion are not unlawful and would not be restrained by a court of equity. But so-called persuasion, backed up by acts of violence, is not an effort to convince the judgment; it is an effort to force compliance without reference to the will of those " persuaded," and when used as in the case before us, under the showing made by this bill, it is properly subject to restraint. As in Plant v. Woods, 176 Mass. 492–496, we have here a case where the facts as stated tend to show that appellants have conspired to compel appellee to execute the agreement referred to, and to this end are engaging in the use of unlawful means with the purpose and with the result of inflicting great pecuniary loss. It is said in the last mentioned case (p. 498), quoting from Sir William Erle's book on Trade Unions, " Every act causing an obstruction to another     *     *     * done not in the exercise of the actor's own right but for the purpose of obstruction, would, if damage should be caused thereby to the party obstructed, be a violation " of the prohibition of the law against interference with the fullest right of every person to dispose of his labor or capital according to his own will. It is said in Barr v. Essex Trades Council, 53 N. J. Eq. 101 :

" Nor does it matter whether the wrongdoer effects his object by persuasion or by false representation. The courts look through the instrumentality or means used to the wrong perpetrated with the malicious intent, and base the right of action upon that."

It is the thing described in the bill and characterized as " persuasion " that is here enjoined, not some other thing which might be described under the same name.

It is urged that the injunction order should be so ,modified as not to restrain the maintenance of a picket or patrol, which it is said is not unlawful. It is, we think, true that picketing or patrolling, when the terms are used to designate mere watching or being in the street, should not be enjoined. The terms themselves are of military origin and apply to acts customary in time of war. Nevertheless there may doubtless be picketing and patrolling which are not unlawful. But the picketing described in the bill before. us is not of that character. It is, as we have said, accompanied with the use of force and violence, and it is the kind of picketing and patrolling described in the bill of complaint which is enjoined.

As the law stands, the injunction as issued can not be interfered with, under the averments of the bill. The order of the Superior Court must be therefore affirmed.