## Carter H. Harrison, et al., v. The People of the State of Illinois, ex rel. Henry Raben.

### Gen. No. 11,980.

1.  DRAM-SHOP LICENSE—*when mayor without discretion to refuse to grant.*  Where the applicant for a dram-shop license has complied with all the laws and ordinances pertaining to the granting of a dram-shop license, the mayor is divested of any discretion to refuse such license, and refusing, may be compelled by *mandamus* to grant the same.

2.  DRAM-SHOP LICENSE—what not ground for refusal to grant. The fact that the proposed dram-shop was to be located immediately next to the grounds of one of the public schools of the city is not ground for the refusal to grant a dram-shop license where the applicant has complied with all other requirements.

*Mandamus* proceeding.  Appeal from the Superior Court of Cook County; the Hon. ELBRIDGE HANECY, Judge, presiding.  Heard in this court at the October term, 1904.  Affirmed.  Opinion filed December 4, 1905.

**Statement by the Court.** The relator filed a bill against appellants praying for a writ of *mandamus* compelling them to issue to him a license to keep a dram-shop at No. 345 East Division street in the city of Chicago. He alleged that he was a resident of said city, a person of good character and repute, and the lessee of said premises; that he had complied with all the ordinances of the city of Chicago and with all the laws of the State of Illinois relating to dram-shops, had fitted up said premises with saloon fixtures, and had paid to said city the first period license fee, but that appellants refused and do still refuse to grant to him the necessary saloon license to carry on the business of a dram-shop on said premises.

Appellants in their answer to said petition, among other things, say: "That the ordinances of the city of Chicago give to the mayor of said city the power to issue licenses to keep dram-shops in said city, but they aver that the said ordinances do not make it the duty of the said mayor to grant such license to every applicant therefor, and they aver the fact to be that it is within the power of the said mayor to deny an application for a license to keep a dram-shop when the place selected for such dram-shop is not a proper place for such a business to be conducted, and they aver the fact to be that the premises described in said petition are adjacent to a public school, attended by a very large number of children, and that it is not a proper place in which to conduct a dram-shop, and they further aver that persons engaged in mercantile pursuits in that vicinity have protested against the establishment of a dram-shop in said premises, and the said mayor, believing that in so doing he was conserving the best interests of the people, has refused, and still does refuse, to grant a license to keep a dram-shop on said premises."

The cause was submitted to the court for trial upon the following agreed statement of facts:

"It was admitted by the parties that the only ordinance of the city of Chicago regulating the matter of granting licenses to keep dram-shops is as follows:

'1175. The mayor of the city of Chicago shall, from time to time, grant licenses for the keeping of dram-shops within the city of Chicago to persons who shall apply to him in writing therefor, and shall furnish evidence satisfying him of their good character. Each applicant shall execute to the city of Chicago a bond, with at least two sureties, to be approved by the city clerk or city collector, in the sum of. five hundred dollars, conditioned that the applicant shall faithfully observe and keep all ordinances in force at the time of the application or thereafter to be passed during the period of the license applied for, and will keep closed on Sundays all doors opening out upon any street from the bar room where such dram-shop is to be kept, and that all windows opening upon any street from such bar or room shall, on Sundays, except between the hours of one o'clock A. M. and five o'clock A. M., be provided with blinds, shutters or curtains, so as to obstruct the view from such street into such room. Nor shall any windows be painted or covered in any manner so as to obstruct the view from such street into such room. No application for a license shall be considered until such bond shall have been filed.'

It is admitted that the petitioner made his application for a license to keep a dram-shop at the place in question, and that in so doing he did everything required of him by the laws or ordinances; that no question was or is made of the sufficiency of the bonds tendered by petitioner, or of his good character, and that his application was refused solely because the place where he proposed to keep his dram-shop is immediately next to the grounds of the Lyman Trumbull School, one of the public schools of the city, the mayor being of opinion that he has a right to refuse a license when, in his judgment, the place in which it is proposed to keep a dram-shop is one where a dram-shop will be a detriment and an injury to the neighborhood and offensive to the best interests of society.

It is further admitted that the south school building has not been used regularly in the past two years, that it has not been used but two or three times, though it is ready for

Harrison v. The People.

use; some of the rooms of the north school building are not used, as there are not enough scholars to require the use of the whole building; that the property is held for school purposes 'and intended for use as a school, and that the location of the proposed saloon with reference to the school, and the surroundings, are truthfully set out in a plat shown in the abstract."

The plat shows that the school grounds are situate on the northeast corner of Division and Sedgwick streets, having a frontage of 184 feet upon the former and of 225 on the latter street. Near the center of these grounds are two school buildings. The lot known as 345 Division street adjoins the school grounds upon the east. The rear of this lot is 55 7-12 feet from the east wall of the south school building, and the rear of the saloon building is 200 feet from the southeast corner of the north school building. From the front of the saloon to the gate leading into the school grounds on Division street the distance is 38 7-12 feet. There are six other saloons and a theatre in the immediate vicinity of these school grounds.

The judgment of the court awarded a writ of *mandamus* requiring appellants to issue to the relator a license to keep a dram-shop on said premises.

William D. Barge, for appellants; Edgar Bronson Tolman, Corporation Counsel, of counsel.

O'Donnell & Coghlan, for appellee.

Mr. Justice Ball delivered the opinion of the court.

The right to sell intoxicating liquors by retail is not a natural nor a constitutional right. Where such right is given by statute the provisions of the act must be strictly followed or it cannot be exercised. People v. Cregier, 138 Ill., 401, 418.

In order to succeed, a party litigant, who prays for the issuance of a writ of *mandamus,* must set forth and establish a clear right to the relief demanded. Every material fact necessary to show that the defendant is under a legal obliga-

tion to perform the act sought to be enforced must be alleged and proved. If the duty be not absolute and the defendant has a discretion in the granting or in the refusing of the privilege sought, *mandamus* will not lie. But if the applicant has complied with the laws and the ordinances governing the matter in controversy, the officer charged with the duty of extending the privilege becomes a mere ministerial agent and has no discretion in the premises. In such case, if he refuse to grant the privilege, *mandamus* is the proper remedy to compel him to perform his duty. People v. Fletcher, 2 Scam., 482; C., B. & Q. Ry. v. Wilson, 17 Ill., 129; People v. Hatch, 33 Ill., 9; East St. Louis v. Wider, 46 Ill., 351; People v. C. & A. Ry. Co., 55 Ill., 95; Commissioners v. People, 60 Ill., 339; County of St. Clair v. People, 85 Ill., 400; People v. Davis, 93 Ill., 134; People v. Crotty, 93 Ill., 186; People v. Johnson, 100 Ill., 543; Bd. of Supervisors v. People, 110 Ill., 511; People v. Bd. of Supervisors, 125 Ill., 334; Brokaw v. Commissioners, 130 Ill., 483; People v. Hastings, 6 Ill. App., 179.

In People v. Fletcher, *supra,* Risk petitioned the Supreme Court for a writ of *mandamus* directed to Fletcher, clerk of the Kane County Circuit Court, commanding him to receive and file Risk's bond as sheriff-elect and to administer to Risk the oaths of office. The court granted the writ, saying: "We are of the opinion that the filing of the bond of the sheriff and administering the oaths of office is merely a ministerial duty. The clerk had no right to take upon himself to judge as to the qualifications of the sheriff, or to determine what will be the effect of his performing his duty. He must perform what the statute has required of him, without regard to consequences."

In C., B. & Q. Ry. Co. v. Wilson, *supra,* appellant being authorized by its charter to construct and to operate a railroad, applied to appellee as circuit judge for the appointment of commissioners to condemn lands. He denied the application. Upon appeal the Supreme Court awarded a peremptory *mandamus,* saying, among other things: "Here the act to be performed by the circuit judge is

strictly of a ministerial character, and it was so determined by this court in the case of the Illinois Central Railroad Company v. Rucker, 14 Ill., 153, where a *mandamus* in precisely such a case was awarded by this court. When such a case is made as is required by the statute, the judge has no discretion whether he will appoint commissioners or not. It is his imperative duty to do so. Necessarily he must look to see whether such a case is presented as authorizes and requires him to act, and such is the case with every officer who is called upon to discharge a ministerial duty." C., B. & Q. Ry. Co. v. Wilson, 17 Ill., 128–9. See, also, People v. Hastings, 6 Ill. App., 436; Hickey v. C. & W. Ry. Co., 6 Ill. App., 172; Foss v. Chicago, 56 Ill., 354; Bibel v. People, 67 Ill., 172.

To sustain the action of the mayor in this regard appellants cite many cases from the reports in other States. (among which are Haggart v. Stehlin, 137 Ind. 43; Leigton v. Maury, 76 Va. 865; Sherlock v. Stuart, 96 Mich., 193; Muller v. Com'rs, 89 N. C., 171; State v. Cheyenne, 40 L. R. A. 710; Perry v. Salt Lake, 7 Utah, 143), and one case in this court (Swift v. People, 63 Ill. App., 455). The case from sister States, though persuasive, cannot be followed, nor can we follow the law as laid down in the Swift case, *supra,* for the reasons hereinafter given.

Under the admitted facts of this case the pivotal question is: had the mayor of the city of Chicago any discretion to refuse to issue the license demanded by the relator?

By chapter 24, R. S., Hurd 1903, the subject of the licensing of dram-shops, within its corporate limits, is delegated to the city of Chicago. In pursuance of that power the common council passed an ordinance governing this subject. This ordinance states that the "mayor of the city of Chicago shall from time to time grant licenses for the keeping of dram-shops within the city of Chicago to persons who shall apply to him in writing therefor." It also provides that the party applying for such a license shall furnish evidence satisfactory to the mayor of his good character;

and sets out what other steps the applicant must take in order to put himself in position to demand the same.

It is admitted that in making his application the relator did everything required of him by the laws and ordinances; that no question was or is made as to the sufficiency of the bonds tendered by him, or as to his good character; and that his application was refused solely because the place where he proposed to keep his dram-shop is immediately next to the grounds of one of the public schools of the city.

We are of the opinion that under the decisions of our Supreme Court upon the admitted facts of this case, the mayor had no discretion to refuse to issue the license as demanded. The Legislature has delegated to the city of Chicago the power to control the keeping of dram-shops within its limits. The city by ordinance has exercised that power. The ordinance fully determines to whom and under what circumstances licenses shall be granted and leaves to the mayor no discretion as to the location of the proposed saloon. When the applicant has complied with the laws and ordinances, and the mayor is satisfied that he is a man of good character and the bonds he tenders are sufficient, the mayor becomes a mere ministerial officer, and it is his duty to issue the license upon proper request.

Our government is one of law. Our rights and our liberties are conserved by general rules acting upon each and all alike. All laws and ordinances must be general in their operation, and must grant equal rights to every inhabitant of the State or city. Privileges thus granted must be extended to every one upon the same terms, conditions and restrictions. Chicago v. Rumpff, 45 Ill., 90; Millett v. People, 117 Ill., 294; McGregor v. Village of Lovington, 48 Ill. App., 208; Swigert v. People, 50 Ill. App., 187.

Where the Supreme Court has declared what the law is upon any point, it is our duty to follow that decision in like cases. Field v. People, 2 Scam., 79.

In Zanone v. Mound City, 103 Ill., 552, the question here at issue came up to the Supreme Court upon demurrer to a petition for a writ of *mandamus* against the municipal

authorities of Mound City to compel them to issue to the relator a license to keep a dram-shop within the corporate limits of the city.  The petition alleged full compliance by the relator with all the conditions and requirements of the city ordinance providing for the issue of licenses to keep dram-shops within the city, and averred that he was in every respect a suitable person to be licensed to carry on such business, and had tendered the license fees fixed by the ordinance and a good and sufficient bond as required by the act, and yet the respondents had refused to issue such license, and this without excuse, justification or explanation.  All these things were admitted by the demurrer.  The writ was ordered to be issued.  That case and the one at bar are on all fours, except in one particular, namely, that here the defendants say that the mayor refused to issue the license because the place where appellee proposed to keep his dram-shop is immediately next the grounds of one of the public schools of the city.  This difference is immaterial, for the reason that the ordinance of the city of Chicago concerning dram-shops does not refer to the place where the dram-shop shall be situate, other than to say that it must be within the city limits, nor does it confer upon the mayor any power to determine that the place selected is a suitable place for the location of a dram-shop.  The Supreme Court, among other things, said:  "* * * Such ordinances must be general in their character, and operate equally upon all persons within the municipality of the class to which the ordinance relates.  * * * Whether a license be that of a merchant, a peddler, or a keeper of a dram-shop, it confers a privilege upon the citizen for which the law requires a fixed compensation to be paid, and the privilege must be open alike to all citizens of the municipality in and on like conditions.  * * * The case of East St. Louis v. Wider, 46 Ill., 351, decides, expressly, that *mandamus* is the proper remedy where an applicant has brought himself within the provisions of such an ordinance, and the municipal authorities refuse the license.  * * * The doctrine that any one who has brought himself within the requirements regu--

lating the licensing power may compel, by *mandamus,* the corporate authorities to grant him a license where it is refused through mere caprice, is recognized, either expressly or by necessary implication, in all the cases bearing upon this subject to which our attention has been called. \* \* \* Equality before the law is a fundamental principle of our institutions, and no reason is perceived why applicants for license to keep a dram-shop, who are suitable persons to be licensed, should stand on an equality before the law. \* \* \* Being of the opinion that the record shows a clear right in the relator, the peremptory writ sought by the petition is ordered to be issued." It is true that two of the seven judges dissented from this opinion, and one of them refused to concur therein, but that opinion stands as the judgment of our Supreme Court upon the question at bar.

If the citizens of Chicago desire to prevent the licensing of dram-shops to be kept in the immediate vicinity of schools, or of churches, or in strictly residence neighborhoods, they must prevail upon the common council to pass an amendment to the present ordinance, which amendment shall give to the mayor a discretion as to the *place* where a dram-shop may be located.

It follows from what has been said that the refusal of the mayor to issue this license was an act beyond his power, and therefore the judgment of the trial court must be and it is affirmed.

*Affirmed.*