428    APPELLATE COURTS OF ILLINOIS.

The Boston Store v. Retail Clerks Int. Pro. Ass'n, 216 Ill. App. 428.

## The Boston Store of Chicago, Appellee, v. Retail Clerks International Protective Association, Local 226, et al., Appellants.

## Gen. No. 25,363.

1. EQUITY, § 356*—*what is effect of motion to dismiss bill for want of equity on face of bill.* A motion to dismiss a bill in chancery for want of equity on the face of the bill is treated as a general demurrer and. admits all of the facts well pleaded in the bill.

2. INJUNCTION, § 192*—*when verified bill warrants granting of injunction against picketing by labor organizations.* A verified bill for an injunction by a department store to prevent picketing of said store by labor organizations, and to prevent interference with patrons and employees, warrants the granting of an injunction, there being a mere motion to dismiss for want of equity, so that the facts well pleaded are assumed to be correct, and it being the law of this State that peaceful picketing is unlawful.

3. COURTS, § 150*—*binding effect on Appellate Court of decisions of Supreme Court.* The Appellate Court is bound by and required to follow decisions of the Supreme Court on a question.

Interlocutory appeal from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding. Heard in the Branch Appellate Court. Affirmed. Opinion filed January 30, 1920.

**Statement of the case.** This is an appeal from an order of the superior court of Cook county, entered June 12, 1919, granting a temporary injunction in favor of the Boston Store of Chicago, a corporation, complainant. The bill was filed on June 11, 1919. It was verified by Henry C. Hart, secretary and manager of complainant. Notice of the application for the injunction was given. All of the defendants entered their appearance, and their counsel in open court argued against the issuance of the injunction as prayed

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

on the face of the bill. No answer of the defendants or any of them was filed.

It is alleged in the bill in substance that complainant is an Illinois corporation, incorporated in 1903, and capitalized at $500,000; that since its incorporation it has conducted and is now conducting a department store in Chicago, selling at retail to the public trade of Chicago and surrounding territory wearing apparel, household goods, and various other merchandise; that its building is 18 stories in height and is bounded on the north by an alleyway known as Calhoun place, on the east by North State street, on the south by West Madison street and on the west by North Dearborn street; that said building is in the heart of what is known as the loop district of Chicago; that complainant is now employing upwards of 4,000 persons in the operation of its business, of which number about one-half are females; that its business is divided into approximately 88 departments; that under its system of compensation to employees they are among the best paid employees engaged in similar occupations in Chicago; that complainant has always operated its business upon the open-shop principle or basis, has never discriminated against members of labor unions in employment, has never entered into any agreement or understanding with any labor union governing the terms and conditions of employment, and has never been involved in any serious controversy with any labor organization.

It is further alleged in the bill in substance that about one year prior hereto the Department Store Clerk's Union sought to organize certain employees of complainant and cause them to become members of labor unions; that another similar effort was made to organize the bakers and butchers employed by complainant in its business; that on March 24, 1919, complainant discharged Ada Scholl, one of the defendants

herein, then employed as a waitress in complainant's restaurant; that she had designated certain other waitresses employed by complainant as "scabs," and had told them that if they did not join the waitresses' union, said union would get them any way; that on March 29, 1919, complainant discharged Jacob Kafitz and Frank Lawley, then employed as bakers, for inefficiency and nonattention to their duties; that about April 5, 1919, a committee called upon R. C. Mangold, superintendent, and Henry C. Hart, manager, of complainant, and insisted that complainant reinstate said Scholl, Kafitz and Lawley in its employ, but that such demand was refused; that on May 21, 1919, complainant discharged Morris King, then employed as a floor walker in the knit underwear department, for inefficiency, and on the same day discharged Morris Liebman for the same reason; that on May 28, 1919, complainant discharged George R. Hickey, then employed in the auto accessories department, because of mistreatment of customers; that about June 3, 1919, a committee of persons, not employees of complainant but representatives of certain labor unions and claiming to be the grievance committee of the Chicago Federation of Labor, called upon said Mangold and said Hart, superintendent and manager, respectively, of complainant, and demanded that complainant reinstate in its employ the said King, Liebman and Hickey, so discharged as aforesaid, but that such demand was refused; that thereupon said committee informed said Hart that "the cards were on the table and you will regret your failure to reinstate these men"; that on the afternoon of June 7, 1919, J. M. Guthrie, one of the defendants herein, together with John F. Fitzpatrick and Edward Nockels, president and secretary, respectively, of the Chicago Federation of Labor, and others, called upon said Mangold and Hart; informed them that they were the grievance committee of said Chicago Federation of Labor, and again demanded that said

King, Liebman and Hickey be reinstated in their several employments with complainant; that the demand was refused, the said Hart telling the committee that complainant reserved to itself the right to hire and discharge whom and when it pleased; that thereupon the committee informed said Hart that if complainant would not reinstate said three men it could have the alternative of posting in all the rest rooms and toilet rooms in complainant's establishment a notice to its employees to the effect that complainant did not discriminate against and would not oppose union labor; that said Hart thereupon told the committee that complainant could not comply with the request; that thereupon said John F. Fitzpatrick stated to Hart, "You will regret this. It may cost you $100,000; it may cost you $500,000; and it may cost you a million dollars, before we are through with you"; that on the afternoon of June 10, 1919, Guy E. O'Neal, one of the defendants herein, visited the butcher shop on the fifth floor of complainant's building and passed to each employee in that department a card bearing the inscription "Don't work to-morrow. Every department on strike. O'Neal"; that on the reverse side of said card appeared O'Neal's name and title as financial secretary of "Local 546, Amalgamated Meat Cutters and Butcher Workmen of North America, A. F. of L. and C. F. of L."; that said abbreviations mean American Federation of Labor and Chicago Federation of Labor; that on the same afternoon John C. Wright, one of the defendants herein and business agent of the Chicago Cooks and Pastry Cooks Association, Local 865, called on H. A. Bachale, the chief chef employed by complainant in its restaurant on the fifth floor of said building, and stated to him that any employee who attempted to come to work on the following day would have to walk through a picket line, that matters had come to a show-down between complainant and various labor organizations, that it was either a case of union-

ism or bolshevism, and that the more policemen complainant engaged the better said labor organization and those associated with them would like it.

It is further alleged in the bill in substance that the Retail Clerks' International Protective Association is an association of clerks employed in retail establishments; that it is composed of branches located in various cities in the United States; that the defendant, Retail Clerks International Protective Association, Local 226 (hereinafter called the Union), is a branch of said national association and is composed of members who are employed in Chicago; that the defendants F. A. Ackerman and J. M. Guthrie are respectively the president and financial secretary of said union, that the defendant Sally Wilkins is a secretary thereof, and that the defendants Ada Scholl, George R. Hickey, Morris King, William Thiel, George Sturdevant, Morris Baumstein and Charles Arnold are members thereof.

It is further alleged in the bill in substance that on June 10, 1919, between 6 and 6:30 o'clock p. m., when the employees of complainant were leaving said building, a woman, whose name is unknown to complainant, patrolled on Dearborn street alongside said building and near the Dearborn street exits thereof, and notified employees that a strike had been instituted, and directed them to quit their employment on the following day, and that at the same time the defendants George R. Hickey and Morris King were stationed near one of said exits and notified employees to the same effect; that the presence and notification of said pickets resulted in a crowd of persons congregating about said exits and blocking the sidewalk for about 30 minutes until dispersed by the police; that on the morning of June 11, 1919, shortly before the opening of complainant's store, about fifteen pickets appeared near said store, on State, Madison and Dearborn

streets, carrying large and conspicuous placards, which bore the words in large letters, "Boston Store is Unfair to Organized Labor"; that said defendants Scholl, Hickey, Thiel, Sturdevant, Baumstein and Arnold, and defendants, Alexander Wasser, M. Liebman, Eugene Kertes, Henry Fraerman, Nathan Shlacter and Solomon Godskin, and others whose names are unknown to complainant, are regularly engaged in said picketing; that other pickets are at elevated railroad stations and other points in said loop district of Chicago, in the vicinity of said store; that said pickets intercept employees of complainant and tell them that a strike has been instituted and to quit complainant's employment and not return; that other pickets congregate in groups in the vicinity of said store, and maintain a watch upon those persons going to and from the same, and by their presence, attitude and demeanor make it clear to the public that they are picketing said store and are antagonistic to complainant and those doing business with complainant; that other persons enter said store and address employees and notify them that a strike has been instituted, and tell them to quit their employment with complainant, and call them "scabs," and threaten them with interference and injury if they continue to work for complainant; that certain of said pickets watch for and intercept employees and distribute to them cards, upon which is printed in large letters: "Department Store Workers: Go to Headquarters, 20 West Randolph"; that employees who go to said headquarters, by reason of said directions, are notified that there is a strike against complainant, and are told to quit their employment; that sympathetic strikes have been declared, as a result whereof persons employed in various capacities such as carpenters and painters, who have no grievance against complainant, have quit their employment with. complainant and have engaged in said strike; that solely because of said picketing a large number of complainant's em-

ployees have been intimidated and compelled to quit their employment, and others who desire to enter complainant's employment have been prevented from so doing, and complainant has been unable to operate its business in the ordinary manner; and that complainant has been compelled to secure police protection from the City of Chicago and to employ special policemen and guards.

It is further alleged in the bill in substance that said picketing and boycotting are ordered and directed by the said officials of said defendant, Retail Clerks International Protective Association, Local 226, and are for the purpose of inducing and compelling persons to quit complainant's employment, or not to re-enter it, while said strike is in progress, and of influencing the public to cease patronizing complainant, and thereby so disrupting complainant's business and causing such loss of patronage, as to compel complainant to reinstate the said persons who were discharged as aforesaid; that the effect of said picketing is to intimidate persons and prevent them from entering into or continuing in complainant's employment, and to annoy the public and induce the public not to patronize complainant, and that said picketing is a nuisance; that the placards so displayed by the pickets are a misrepresentation, in that they do not apprise the public of the nature and grounds of the controversy but make it appear that complainant has in some way incurred the hostility of said union and that said union is boycotting complainant's store, and that thereby a considerable portion of the public are led to believe, and do believe, that complainant has been and is grossly unfair to its employees, whereas the contrary is the case; that persons are withholding their patronage from complainant because they fear said pickets or are annoyed by them, or because they desire to avoid the implication of taking part in the controversy by patronizing complainant, or because they prefer to

patronize stores which are not picketed or patrolled; that picketing, no matter how peaceful it may appear to be, intimidates and annoys employees, applicants for employment and customers and deprives persons of their right, without fear or molestation, to continue in their employment, to enter into the employment of complainant, or to patronize complainant; that complainant has no adequate remedy at law; that said defendants and those aiding and assisting them are not financially responsible, and that damages against them could not be collected; and that complainant's only remedy is by injunction and that unless it is issued as prayed complainant will suffer irreparable loss and injury, etc.

The court ordered that, upon the filing by complainant of a bond in the sum of $1,000, to be approved by the court, the defendants, and each of them, and all associations, firms and persons assisting, aiding, confederating or conspiring with them, or having knowledge hereof, be restrained until the further order of the court:

"From in any manner interfering with, hindering, obstructing or stopping the business of the complainant, or the agents, servants, or employees of the complainant, in the operation of the business of the complainant;

"From picketing or maintaining any picket or pickets at or near the premises of the complainant or along the routes used by persons in going to and from the premises of the complainant;

"From patrolling or congregating in front of or in the vicinity of the place of business of the complainant;

"From exhibiting or distributing, or causing to be exhibited or distributed, printed or other matter in front of, or in the vicinity of, the place of business of the complainant, designating or characterizing the complainant as unfair to organized labor;

"From soliciting or inducing, or attempting to induce, persons not to enter into or continue in the em-

436    APPELLATE COURTS OF ILLINOIS.

The Boston Store v. Retail Clerks Int. Pro. Ass'n, 216 Ill. App. 428.

ployment of the complainant, for the purpose of injuring the complainant or interfering with the business of the complainant;

"From soliciting, inducing or influencing, or attempting to induce or influence persons not to patronize or deal with complainant;

"From preventing or attempting to prevent persons from freely or voluntarily entering into or freely or voluntarily continuing in the employment of the complainant;

"From attempting by promises of money, rewards and other considerations to induce persons to quit or not enter into the employment of the complainant with a view to injuring the complainant in its business;

"From assaulting, menacing, intimidating or harassing persons employed by or going to and from the place of business of the complainant;

"From organizing, maintaining, engaging in, or attempting to organize or maintain any boycott against the complainant;

"From boycotting or attempting to create or enforce any boycott against the employees of the complainant, and from attempting to induce persons to discriminate against and not to deal with the employees of the complainant;

"From advising, encouraging or assisting in the, doing of any of the things which are herein forbidden."

CRUICE & LANGILLE, for appellants; DANIEL L. CRUICE, of counsel.

DUDLEY TAYLOR and HAMILTON MOSES, for appellee.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

It is well settled that a motion to dismiss a bill in chancery for want of equity on the face of the bill is treated as a general demurrer and admits all of the facts well pleaded in the bill. (*Grimes v. Grimes*, 143 Ill. 550, 556; *Leonard v. Arnold*, 244 Ill. 429, 432; *Lavin*

*v. Board of Com'rs of Cook Co.*, 245 Ill. 496, 509.)   In the present case, inasmuch as it appears that the bill prays for an injunction, that due notice of the application for the temporary injunction was given to the defendants, that they entered their appearance and their counsel argued in open court against the issuance of the temporary injunction, that no answer or affidavits were filed denying any of the allegations of the bill, and that the injunctional order appealed from was granted on the face of the bill, the facts as stated in the bill, so far as they are well pleaded, must here be assumed to be correct.   (*Christensen v. Kellogg Switchboard & Supply Co.*, 110 Ill. App. 61, 70.)

Under the well-pleaded facts in said verified bill contained, and under the law of this State as declared by our Supreme Court in several cases (*Doremus v. Hennessy*, 176 Ill. 608; *London Guarantee & Accident Co. v. Horn*, 206 Ill. 493; *O'Brien v. People*, 216 Ill. 354; *Purington v. Hinchliff*, 219 Ill. 159; *Franklin Union No. 4 v. People*, 220 Ill. 355; *Wilson v. Hey*, 232 Ill. 389; *Barnes & Co. v. Chicago Typographical Union No. 16*, 232 Ill. 424), we are of the opinion that the superior court was fully warranted in issuing the injunctional order appealed from.   We regard the decision in the *Barnes* case, *supra*, as particularly applicable to the facts in the present case.   In the *Barnes* case the decree of injunction, which was affirmed, is quite similar to the injunctional order in the present case.   These decisions are controlling and it is the duty of this Appellate Court to follow them.   (*Field v. People*, 3 Ill. (2 Scam.) 79, 98; *Harrison v. People*, 125 Ill. App. 178, 184.)

It is strenuously contended by counsel for the appellants that our Supreme Court, in the latter case of *Kemp v. Division No. 241* (255 Ill. 213), has materially modified the law as previously declared in the *Barnes* case and the other cases above cited.   We do not so read the *Kemp* case as to reach the conclusion that it

materially modifies the law, as declared in said *Barnes* case and said other cases, to be applied to a case such as the admitted facts of the present case disclose. And another branch of this Appellate Court, in the opinion in the case of *Philip Henrici Co. v. Alexander,* 198 Ill. App. 568, 579, where the facts were somewhat similar to the facts of the present case, after discussing the *Kemp* case and other cases, said "Cases from other jurisdictions have been cited which hold that peaceful picketing is not unlawful, but so far as we have been able to ascertain, the law in this State in reference to picketing as announced in the *Barnes* case, *supra,* has not been changed." And we do not think that the decision in the recent case of *Lyon & Healy v. Piano Workers' Union,* 289 Ill. 176, cited by appellants' counsel, modifies the law as announced in the *Barnes* case.

The order of the superior court will be affirmed.

*Affirmed.*